660 So.2d 175 (1995)
Charlie ALLEN, Plaintiff-Appellant,
v.
MISCO PAPER, Defendant-Appellee.
No. 27,146-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
*177 Sir Clyde Lain, II, Monroe, for appellant.
Phillip D. Myers, Theus, Grisham, Davis & Leigh, Monroe, for appellee.
Before MARVIN, BROWN and WILLIAMS, JJ.
WILLIAMS, Judge.
The claimant, Charlie Allen, appeals a judgment rejecting his worker's compensation claim for temporary total disability benefits, medical expenses, penalties, and attorneys fees. Questioning the credibility of the claimant and a medical witness, the worker's compensation hearing officer ("WCHO") concluded that the medical evidence did not support Allen's contentions. On appeal, Allen argues that the judgment is contrary to the law and evidence and maintains that he offered sufficient evidence to prove a causal connection between his work related accident and his injury. Allen asserts that the WCHO erred in denying the relief sought. We reverse the judgment.

FACTS
Charlie Allen, a baler operator employed by Misco Paper Company ("Misco"), testified that he was injured on the afternoon of June 17, 1993, while working the 7:00 a.m. to 3:00 p.m. shift. He stated that he was carrying baling supplies when he slipped and fell. He struck his knee on the baler and his hand on the floor. Allen reported his fall to Travis Parker, supervisor, and Lester Acton, plant foreman, and filled out an accident report in which he stated he injured his right knee, lower back and left hand.
After the shift ended, another employee took Allen to Monroe Medical Clinic where he was placed in a treatment room, but was never seen by a doctor. The claimant stated that Kenneth Allen, the plant manager, came to the clinic and informed him that the insurer was going to drop coverage if employees continued having accidents. When the claimant told Kenneth Allen that he had been waiting over two hours, the manager indicated he would go talk to the doctor. Allen testified that after waiting a while longer, he obtained a note that he had been at the clinic and went to Saint Francis Medical Center *178 where an emergency room physician diagnosed a fractured left hand.
On the referral of the emergency room physician, the following day Allen went to The Orthopaedic Clinic of Monroe; however, he was not treated because his insurance coverage was not verified. Subsequently, Allen received treatment at Saint Francis Medical Center and at E.A. Conway Memorial Hospital. Thereafter, he sought treatment from Dr. Norris at the Glenwood Family Practice Clinic. Therapy there was discontinued because insurance coverage was not assured.
The testimony of Allen's co-workers supported his account of the accident. Clarence E. Rice testified that he saw Allen getting up from the floor near his baler. Although Rice did not talk with Allen, Rice heard Allen state he had hurt his hand and saw Allen holding his hand. Charles Ray Wilhite testified that he saw Allen fall and heard him complain about his hand when he got up. Wilhite stated that Allen was trying to brace himself. Wilhite testified that he thought the injury was to the right hand, but that he did not know. Michael Wayne Wade testified that he saw Allen entering the foreman's office limping and holding his hand. Wade thought the left hand was injured, but was uncertain. Wade saw Allen inform the plant foreman that he was hurt. Wade also testified that Allen told him, Wade, that he slipped, fell and hurt himself.
In contrast to the claimant's account, William Gary Maroney, plant superintendent, testified that, approximately twenty to thirty minutes after the accident, Allen reported that he bumped his knee, but did not refer to his hand or back. Travis Parker, the claimant's supervisor, stated that Allen reported he had hit his knee on the baler, but did not mention his back or hand. Parker did not hear about a hand injury until the next morning.
The testimony of the plant manager, Kenneth Allen, corroborates much of the testimony of Charlie Allen, the claimant. Kenneth Allen stated that he went to the Monroe Medical Clinic when he learned of Allen's injury. He testified that the claimant told him that he struck his knee and hurt his hand. The manager further testified that when Allen told him that he had been waiting two hours, the manager stated that he would find Dr. Jeffery and ask that he please see the claimant. About fifteen minutes later, the claimant came out of the treatment room, was very angry, and stated he was going to another hospital. Allen testified that he and the claimant did not have a conversation with Dr. Jeffery as Dr. Jeffery contended. The employer's report prepared by Allen on June 18, 1993, stated that the claimant injured his left knee while opening the door on the baler machine. The employer's report does not mention the claimant's left hand. Allen testified, however, that the employee's accident report, completed by the claimant on June 17, 1993, states that the "left hand" was injured and that the claimant had told him on the day of the accident that his hand was hurt.
In deposition, Dr. James C. Jeffery stated that he briefly examined the claimant at the Monroe Medical Clinic on June 17, 1993, but did not take x-rays. He testified that he determined without the aid of x-rays that Allen did not have a fractured hand. According to Dr. Jeffery, Allen informed him that he had used his hand to break a fall at work. The doctor stated that he called Kenneth Allen to notify him that the claimant was at the clinic. In contrast to both the manager's and the claimant's accounts, the doctor testified that both he and the manager went into the room to question the claimant, at which point the claimant became angry. He further testified that the claimant left the clinic at about 3:30 p.m. on that date. Dr. Jeffery opined that Charlie Allen's hand was broken after he left the clinic and before he went to the emergency room at Saint Francis Medical Center. Dr. Jeffery testified that there were "quite a few hours" between the time Allen left the Monroe Medical Clinic and the time he presented at the Saint Francis Medical Center. Contradicting the doctor's version is the note Charlie Allen obtained from the Monroe Medical Clinic which showed he arrived at approximately 3:30 and left at 5:20 p.m. on June 17, 1993. In addition, the Saint Francis Medical Center records, which were introduced into evidence, *179 indicate that Allen was initially seen at 5:45 p.m., some twenty-five minutes after he left the Monroe Medical Clinic.
Dr. Randy Sussmane-Stubbs testified that he saw the claimant at the Saint Francis Medical Center emergency room on the evening of June 17, 1993. He stated that Allen informed him that he fell at work while carrying a roll of wire, striking his right knee on the baler and his left hand on the concrete floor. X-rays revealed fractures of the second and third metacarpals. Dr. Stubbs splinted the hand, gave Allen pain medication and referred him to an orthopaedist. He opined that the injury was not consistent with the claimant's hand having struck a flat floor as he would have expected more damage to the second digit or the base of the second digit from that type of fall.
Asserting that the employer's compensation insurer agreed to cover his back and knee injuries but not his injured hand, Allen filed a claim against Misco and its worker's compensation insurer, Liberty Mutual Insurance Company. At trial, the parties stipulated that Allen was employed by Misco at an average of $472 per week; that Allen was off work for seven weeks, from June 17, 1993, through August 9, 1993; that his compensation rate was $267.15; and that the maximum compensation to which Allen was entitled was $1,870.50. Allen appeals the WCHO's judgment denying his claim.

DISCUSSION

Benefits:
An injured employee is entitled to receive benefits for an injury that arises out of and in the course of his employment. LSA-R.S. 23:1031. The injured employee bears the initial burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. It is not necessary that the claimant establish the exact cause of the disability, but it is necessary that he demonstrate by a preponderance of proof that the accident had a causal connection with the disability. The causal relationship can be established when the employee proves that before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appeared, and there is sufficient medical evidence to show a reasonable possibility of causal connection between the accident and the disabling condition. Quinones v. USF & G, 93-1648 (La. 01/14/94), 630 So.2d 1303.
When there is proof of an accident and of the following disability without any intervening cause, it is presumed that the accident caused the disability. The effect of this presumption is to shift the burden of proof to the defendant. Causation is not necessarily a medical conclusion. Its ultimate determination is to be made by the court based on all the credible evidence. Franklin v. Pizza Hut, Inc., 572 So.2d 685 (La.App. 4th Cir.1990).
In Martin v. Riverview Medical Center, 618 So.2d 1014 (La.App. 1 Cir.1993), writ denied, 623 So.2d 1333 (La.1993) the court observed that, once the presumption is established, the employer has the burden of producing evidence to persuade the court that it is more probable than not that the injury did not result from the work accident. If the evidence is evenly balanced, or shows only some possibility that a work related event produced the disability or leaves the question open to speculation or conjecture, the court may conclude that the claimant has failed to carry his burden of proof.
The standard of review to be applied to a worker's compensation case decided by a hearing officer is the same as the standard applied to a district court decision, i.e., the factual findings of a WCHO may not be set aside without first determining that those factual findings were manifestly erroneous or clearly wrong. Great weight is given the trier's factual conclusions, reasonable evaluations of credibility, and reasonable inferences of fact. The manifest error standard of appellate review applies equally when some of the evidence includes written reports, records, and depositions. Key v. Insurance Co. of North America, 605 So.2d 675 (La.App.2d Cir.1992). When there are two permissible views of the evidence, the factfinder's choice between the two cannot be manifestly erroneous or clearly wrong. Morris v. Norco Const. Co., 632 So.2d 332 (La.App. 1 *180 Cir.1993), writ denied, 94-0591 (La. 04/22/94), 637 So.2d 163.
Prior to June 17, 1993, Charlie Allen did not have a fractured left hand, as was then diagnosed by Dr. Stubbs. The WCHO properly rejected consideration of the testimony of Dr. Jeffery which was contradicted by both the claimant and Kenneth Allen, the plant manager, as well as by documentary evidence. However, the WCHO then proceeded to question the claimant's credibility because his statements conflicted with Dr. Jeffery's statements. The WCHO also doubted the claimant's credibility based on depositions by physicians who treated Allen for a previous, May 4, 1993, injury. The depositions, which were admitted into evidence for the limited purpose of assessing Allen's credibility, indicated that Allen had exaggerated his symptoms regarding the May 4, 1993 injury.
Allen's version of his injury is supported by the testimony of three co-workersRice, Wilhite and Wade. Although two members of Misco's management stated that Allen did not mention injuring his hand, the employee's accident report contradicted this testimony. In addition, Kenneth Allen, plant manager, admitted that the claimant told him at the Monroe Medical Clinic that he had hurt his hand. However, the manager did not include the hand injury in the company report he wrote the next day. A review of the record reveals that the WCHO was clearly wrong in concluding in her reasons for judgment that "the only evidence presented in support of the claimant's contentions was his own self-serving testimony with no other corroboration."
Other than Dr. Jeffery's testimony, which was rejected as lacking credibility, the primary evidence presented by the defendants to rebut the presumption that Allen broke his hand in a work-related injury, was Dr. Stubbs' opinion that a hand striking a flat surface normally had more damage to the second digit, while Allen's fractures were to his second and third metacarpals. Dr. Stubbs did not state it was impossible for Allen to have fractured his hand in a fall to the floor. He merely noted that the type injury was normally somewhat different from Allen's breaks. The record is devoid of any evidence that Allen fractured his hand other than as he stated. Therefore, the defendants have not overcome the presumption that Allen broke his hand on June 17, 1993, when he fell at work. After a review of the record in its entirety, we find that the evidence between the two versions is not evenly balanced. The defendants' rebuttal evidence is speculative at best. We conclude that the WCHO's finding that the claimant's hand was not fractured in a work-related accident is manifestly erroneous.

Penalties and Attorney's Fees:
Misco's insurer paid $632.20 for Allen's initial medical treatment, but refused to pay subsequent medical expenses incurred in the treatment of his fractured hand. An assessment of penalties for nonpayment of benefits is proper unless nonpayment results from a condition over which the employer had no control or unless the employee's right to such benefits has been reasonably controverted by the employer or insurer. LSA-R.S. 23:1201E. A claim is reasonably controverted if the employer or the insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Brown v. Vernon Sawyer, Inc., 25,959 (La. App. 2d Cir. 10/26/94), 645 So.2d 260. An award of attorney fees is appropriate when an employer has acted arbitrarily, capriciously, or without probable cause in refusing to pay benefits. LSA-R.S. 23:1201.2. That determination is made based on the facts existing and known at the time the benefits were denied. Whether the employer and/or the insurer should be cast with penalties and attorney fees is a question of fact which should not be disturbed on appeal absent manifest error. Vernon v. Wade Correctional Institute, 26,053 (La.App.2d Cir. 08/19/94), 642 So.2d 684.
Patti M. Jones, a field representative for Liberty Mutual Insurance, Misco's insurer, testified that the decision not to pay Allen benefits was based on the belief that his hand was not fractured in the course and scope of his employment. Jones cited Allen's uncertainty as to whether he fell as a result of his slipping or his back "giving out," as well as a *181 medical report from Dr. Jeffery, as the reasons for the decision. Jones testified that the insurer gave more weight to Dr. Jeffery's report, which indicated that Allen's hand was not injured when he examined him, than to Dr. Stubbs' report, which included the diagnosis of the fractures, because Dr. Jeffery was the first physician to see Allen after the incident. Jones' testimony indicated that the insurer was aware that Dr. Jeffery did not x-ray Allen's hand.
The defendants had a duty to investigate and make every reasonable effort to assemble and assess factual and medical information in order to ascertain whether the claim was compensable before denying benefits. See 25,783 Smith v. Tudor Construction, (La.App.2d Cir. 05/04/94), 637 So.2d 666; Holmes v. International Paper Co. 559 So.2d 970 (La.App.2d Cir.1990). In the instant case, the employer had the accident report which was completed by the claimant immediately after the accident as per the instruction of Lester Acton. That report indicated that his hand was injured. Jones testified that the insurer spoke with Kenneth Allen, the plant manager, regarding the claim, yet the insurer did not take a recorded or written statement from him. Allen's testimony subsequently corroborated much of the claimant's account of events. Further, Jones testified that although the insurer took statements from Misco employees Lester Acton, Travis Parker, and Gary Maroney, none of whom witnessed the accident, the insurer did not interview other persons in the work area who may have witnessed the accident. Yet, as indicated above, there were at least three Misco employees who either witnessed the accident or the events immediately following it, including hearing the claimant state he had hurt his hand.
We note, too, that early in her deposition, Jones represented that she had before her the entire original Liberty Mutual claim file regarding this case. However, later in her testimony Jones indicated that she was unable to answer certain questions because she had only the "computer file" of the claim and not the "paper file" which was in Metairie, Louisiana. For example, when questioned regarding the time the claimant was seen at Saint Francis Medical Center emergency room on June 17, 1993, Jones responded that the "computer file" did not indicate the time and that she did not have the "paper file." The defendants, apparently relying on Dr. Jeffery's statements, suggest that hours lapsed between the time the claimant left the Monroe Medical Clinic and when he was seen at the emergency room of Saint Francis Medical Center and that the claimant broke his hand in the interim. However, the records from Saint Francis Medical Center indicate that the claimant arrived within a short time after leaving the Monroe Medical Clinic.
According to the claimant's testimony, there have been many accidents at Misco. He further testified that when he and Kenneth Allen, the plant manager, spoke at the Monroe Medical Clinic on the afternoon of the accident, Allen expressed concern that the insurer would terminate coverage if Misco employees continued to have accidents. In addition, Allen testified that when the insurer's field representative came to investigate the accident, she stated that Liberty Mutual was going to make a stand and withhold payment.
After a review of the record in its entirety, we conclude that the claimant's right to benefits was not reasonably controverted by the defendants. The defendants' factual and medical information is based on slovenly and/or biased investigation of the claim. Our reading of the record persuades us that the defendants seized Dr. Jeffery's report as a means to deny compensation and made little or no good faith effort to look further. They did so at their peril. Where subsequent to an initial optimistic report, an employer receives information indisputably showing a claimant to be disabled, the employer cannot rely upon the early report and solely on its basis avoid penalty and attorney's fees. Cormier v. Save-Time, Inc. 497 So.2d 404 (La. App.3d Cir.1986). Further investigation was warranted in the instant case, particularly in light of the contradictory medical information. Additional investigation would have revealed that the claimant repeatedly complained of hurting his hand from the time he got up from the floor after the accident and that Dr. Jeffery's account of the sequence of *182 events of June 17, 1993, was less than accurate. Furthermore, the defendants failed to provide evidence that the claimant's hand was fractured other than as he stated.
The tenor of the strong facts and evidence of causation make the defendants' refusal to pay compensation arbitrary, capricious and without probable cause. Thus, we conclude that under the circumstances of the instant case, the WCHO was manifestly erroneous in denying penalties and attorney's fees to the claimant.

CONCLUSION
We conclude that the WCHO erred both in denying the compensation claim and unpaid medical expenses and in rejecting Allen's claim for penalties and attorney fees. The judgment of the WCHO is reversed. At trial, the parties stipulated that the maximum amount of compensation to which Allen would be entitled, is $1,870.50. It is ordered, adjudged and decreed that Charlie Allen is awarded compensation benefits of $1,870.50, with legal interest on past due amounts until paid, and all unpaid medical expenses arising out of the injury to his hand. In addition, we award 12% penalties in accordance with law and $5,000 in attorney's fees. All costs both here and below are assessed against the defendants, Misco Paper Company and Liberty Mutual Insurance Company.
REVERSED AND RENDERED.