679 So.2d 946 (1996)
Scott WEEKS, Plaintiff-Appellant,
v.
BUFFINGTON CORPORATION, Defendant-Appellee.
No. 28,507-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1996.
*947 A.W. Block, Jr., West Monroe, for Appellant.
Dollar, Laird & Scott by John T. Scott, Monroe, for Appellee.
Before BROWN, GASKINS and CARAWAY, JJ.
GASKINS, Judge.
The plaintiff, Scott Weeks, appeals the decision of a worker's compensation hearing officer, denying his claim for benefits. The plaintiff argues that the hearing officer erred in finding that he failed to prove a causal relationship between a work related back injury and his alleged disability. For the following reasons, we affirm.

FACTS
The plaintiff began working at the defendant company, Buffington Corporation, in September 1993. The company, which sells building materials, employed the plaintiff to do manual labor. He earned $240 per week and worked at the company from September through December 1993. He missed numerous days of work due to illness; 22 of these sick days were taken after November 15. He was compensated for each of these absences. The plaintiff's medical problems included sinus infections, vasectomy infections, a testicular cyst, bladder and urinary infections and prostatitis, as well as the work related back injury at issue here.
*948 On November 15, 1993, the plaintiff asserted that he was injured while working at the defendant company. He claimed that he was assisting another worker in loading a wooden beam from a forklift onto a truck. The plaintiff was standing on the bed of the truck and, as he was pulling the beam toward him, he felt something pop in his lower back.
The next day, November 16, 1993, the plaintiff sought medical treatment for his back injury. The plaintiff was diagnosed with a muscle spasm in his back as well as an infection not related to the back injury. He was released to return to work on November 21, 1993. The plaintiff returned to work on that date but had frequent absences over the next month due to maladies other than his back injury. On December 24, 1993, he reported to work, but was in severe pain in his groin and was unable to continue working that day.
Lamar Buffington, president of Buffington Corporation, told the plaintiff that, in light of his numerous health problems, he should apply for unemployment benefits and return to work when his health permitted. The plaintiff received unemployment compensation benefits from January 2, 1994, until May 7, 1994.
In February 1994, when the plaintiff sought to return to work, the defendant company did not have a position for him. On June 20, 1994, the plaintiff filed a claim for worker's compensation benefits against the defendant. The plaintiff claimed that he had continuously had pain from his back injury and had received treatment for that injury. The plaintiff sought worker's compensation benefits and medical expenses. The plaintiff also sought penalties and attorney fees, claiming that the defendant was arbitrary and capricious in denying his claim for benefits.

Worker's Compensation Hearing
The matter was heard before a worker's compensation hearing officer on June 7, 1995. It was not disputed that the plaintiff suffered a back injury in November 15, 1993, arising out of and in the course of his employment. The contested issues were the nature and extent of the plaintiff's disability, his entitlement to worker's compensation benefits and medical treatment and his entitlement to penalties and attorney fees.
At the hearing, the plaintiff testified that his back injury occurred when he was assisting a co-worker, Fred Hilliard, load a heavy wooden beam onto a load of building supplies. He felt something pop in his lower back while pulling on the beam. The plaintiff stated that he reported the injury to Mr. Hilliard and another employee. The plaintiff completed his work day, but was unable to report to work the next day, due to pain.
On November 16, 1993, the plaintiff notified Lamar Buffington, the president of the defendant company, of his injury. Mr. Buffington instructed the plaintiff to go to Monroe Medical Clinic for treatment, at company expense. The plaintiff saw Dr. James Jeffrey, who diagnosed the plaintiff with a muscle spasm in his back and treated the symptoms with muscle stimulation and heat. An x-ray of the plaintiff's back on that date showed no bone damage and a partial loss of the normal physiological curvature of the lumbar spine, indicative of a muscle spasm. Dr. Jeffrey told the plaintiff to stay home from work for one week and to avoid heavy lifting while recuperating. The plaintiff testified that during this time he also sought treatment in the emergency room of North Monroe Hospital for back pain and for a vasectomy infection. He was told that the infection had to be cleared up before his back injury could be treated.
Fred Hilliard denied that the plaintiff told him he hurt his back while loading the beam on November 15, 1993. Later that day, Mr. Hilliard heard the plaintiff tell another employee that he would not be at work the next day because his back would be hurting. Mr. Hilliard stated that after the plaintiff returned to work on November 21, 1993, he did not complain about his back, but made frequent complaints of pain in his groin.
Lamar Buffington confirmed that the plaintiff notified him on November 16, 1993, that he had injured his back at work the day before. According to Mr. Buffington, that plaintiff was absent from work for four days with his back injury, returning to work on November 21, 1993. He was absent November *949 24-26, 1993, with a urinary infection. When the plaintiff reported to work December 3, 1993, Mr. Buffington sent him to the hospital for treatment of a cyst on his testicle. According to Mr. Buffington, the plaintiff returned to work on December 15, 1993, was absent December 16-17, with an infection, and worked December 20-23, 1993. On the morning of December 24, the plaintiff came to work holding his groin and crying. The plaintiff stated that he could work if he took pills. Mr. Buffington did not want the plaintiff to work in pain and suggested that the plaintiff collect unemployment benefits until he got his health problems resolved. Mr. Buffington offered to rehire the plaintiff when he was able to return to work.
The plaintiff remembered going into Mr. Buffington's office on December 24, 1993, holding his groin area because he was in great pain from an infection where he had a vasectomy several years earlier. However, the plaintiff testified that he worked for Mr. Buffington until early January 1994, rather than corroborating Mr. Buffington's testimony that December 24, 1993, was the plaintiff's last day at work. The plaintiff testified that in January 1994, he went to work and reported to Mr. Buffington that his back was still hurting, at which point he was laid off in order to draw unemployment benefits. In early January 1994, Mr. Buffington loaned the plaintiff $100. The plaintiff received unemployment compensation benefits from January through May 1994. The plaintiff stated he went back to check on his job several times during that period.
The plaintiff was released to return to work in February 1994, after treatment of the vasectomy infection. When the plaintiff gave Mr. Buffington the release to return to work, he was told that a position was no longer available. Mr. Buffington testified that he felt bad about not having a position for the plaintiff and gave him a week's pay. According to Mr. Buffington, the plaintiff did not indicate that he still had a back problem. The plaintiff testified that he informed Mr. Buffington in February his back still hurt, but he wanted to come back to work.
Shortly after the plaintiff was told that there was no longer a position for him at the defendant company, he began seeing a chiropractor, Dr. John L. Murphy. Dr. Murphy testified that he first saw the plaintiff on February 25, 1994, for varying low back pain in the L-5 area. The plaintiff told Dr. Murphy that the low back pain started when he lifted a wooden beam at work. Dr. Murphy treated claimant approximately seven times in March and through April using heat, electrical stimulation and light manipulation adjustment. On March 14, 1994, the plaintiff told Dr. Murphy that he had hurt his back moving a box of clothing during the previous week. On April 1, the plaintiff informed the chiropractor he had fallen and hit his hip, which was swollen and sore. The site of this injury was lower than the area previously treated. On April 12, the plaintiff reported a kidney infection for which he was taking medication. The plaintiff's last office visit was June 1, 1994.
In June 1994, Dr. Murphy suggested that the plaintiff go to an orthopedist because the plaintiff's pain was not improving. The plaintiff then sought treatment at LSU Medical Center in Shreveport (LSUMC). An MRI in August 1994 showed degenerative disease of the plaintiff's back which included desiccation of the L4-L5 and L5-S1 discs, along with posterior osteophytes. A small disc herniation was noted at L4-L5, where there was also a moderate amount of disc bulging. An x-ray taken in August 1994 at LSUMC, showed that the plaintiff had a sixth lumbar segment and had spondylolysis with possible minimal spondylolisthesis at the L6-S1 level.
A report at LSUMC on August 19, 1994, shows that the plaintiff complained of right side low back pain with a burning pain in the right lower extremity. The plaintiff had an excellent range of motion and was able to bend over and touch the floor. An October report shows that the plaintiff's earlier excellent range of motion was decreased by pain. On that date, the plaintiff reported right and left radicular back pain. A report at LSUMC on December 20, 1994, showed that the plaintiff was not able to bend over and touch his toes. December x-rays showed no evidence of spondylolisthesis.
*950 Medical records admitted at the hearing show that the plaintiff had a long history of back complaints prior to the November 15, 1993, accident. As early as 1976 the plaintiff reported back pain when seeking treatment for a digestive disorder. The plaintiff sought treatment for back pain at Morehouse General Hospital in 1991. The plaintiff went to Morehouse complaining of throat edema and lower back pain radiating to his scrotum. The medical record also noted an infection the previous month from a vasectomy, plus a history of urinary infections.
During the course of investigating the plaintiff's claim for worker's compensation benefits, a surveillance video tape of the plaintiff was made on behalf of the defendant. The tape was not admitted at the hearing. However, the tape was submitted to the chiropractor, Dr. Murphy, in February 1995. He was questioned about the tape at the hearing. The tape showed the plaintiff getting in and out of his vehicle. Dr. Murphy stated that he did not observe any appreciable restriction of movement in the right or left rotation of the plaintiff's neck and head or in the elevation of his shoulders. He noted little, if any, antalgia in his gait or in his ability to flex forward from the waist. Dr. Murphy stated that he felt the plaintiff should be reevaluated. At the hearing, he testified that the activities he observed on the tape were not inconsistent with the plaintiff's condition as previously observed during his treatment in 1994.
Dr. Murphy next saw the plaintiff on May 1, 1995, for a reevaluation. This examination revealed only 15 degrees of flexion before claimant indicated low back pain. Normal flexion range of motion is 95 degrees. While the normal range for extension is 35 degrees, the plaintiff reported pain at L-5 at ten degrees. At fifteen degrees, the plaintiff indicated pain on both right and left sides. Normal lateral flexion is 40 degrees. Normal spinal rotation is 35 degrees while the plaintiff protested of pain at 5 degrees. Dr. Murphy performed an objective test for pain used when exaggeration of symptoms is suspected. The results indicated that the plaintiff experienced pain.
Dr. Murphy opined that the plaintiff was unable to work from February 1994 to May 1995. On cross-examination Dr. Murphy acknowledged that it was possible the plaintiff's back problem was caused by a congenital anomaly, a sixth lumbar segment. Dr. Murphy admitted that, for most patients with mild bulging discs, treatment for a couple of months brought favorable results and a return to work.
At the hearing, the plaintiff testified that he sustained no other injuries between November 1993 and February 1994 and that he did not work during that time. The plaintiff stated that since the back injury in November 1993, the pain had decreased, but his back still hurt. The hot packs and muscle stimulation gave him no relief, but ibuprofen and aspirin were effective. He also took prescription pain medications prescribed by E.A. Conway Hospital and LSU Medical Center.
After considering the evidence presented, the hearing officer found in favor of the defendant, Buffington Corporation, and dismissed the plaintiff's claim for worker's compensation benefits. In written reasons for the decision, the hearing officer stated that the evidence fairly establishes that the claimant may have suffered a back injury while working at Buffington Corporation on November 15, 1993. However, following that injury, he was released to return to work with no restrictions on November 21, 1993, and he did in fact return to work. The hearing officer stated that the evidence, when taken as a whole, fails to show by a preponderance of the evidence a causal relationship between a job related accident and any disability that the plaintiff may now suffer from. The hearing officer found that the evidence showed that the plaintiff suffered a muscle pull, he returned to work and he did not complain of back pain again. The hearing officer found that the plaintiff failed to meet the burden of proof with clear and convincing evidence. Therefore, the plaintiff's claim for temporary total disability benefits was denied.
In rejecting the plaintiff's claim for supplemental earnings benefits, the hearing officer found that the plaintiff failed to show that he *951 made a diligent effort to obtain work in his geographical area that he could perform and which paid only 90 percent or less of his pre-injury wages. The hearing officer also found that the plaintiff's claim for worker's compensation benefits was reasonably controverted, therefore his claim for attorney fees was denied. The plaintiff appealed, arguing that the hearing officer erred in finding that he failed to prove that his back complaints were related to an injury sustained during employment.

TEMPORARY TOTAL DISABILITY BENEFITS
The plaintiff argues that the hearing officer erred in denying his claim for temporary total disability benefits. This argument is without merit.
The appropriate standard for appellate review is the "manifest errorclearly wrong" standard, which precludes the setting aside of a trial court or jury's findings of fact unless those findings are clearly wrong in light of the record reviewed in its entirety. Rosell v. ESCO, 549 So.2d 840 (La.1989). The same standard of appellate review applicable to the fact findings of district courts is also applicable to the factual findings of worker's compensation hearing officers. Alexander v. Pellerin Marble and Granite, 93-1698 (La. 1/14/94), 630 So.2d 706. When an appellate court finds manifest error, the factual findings of the trier of fact may be reversed. In order to determine whether there is manifest error, the record must be reviewed in its entirety, and if the appellate court finds manifest error, it is required to determine the facts de novo from the entire record. Alexander v. Pellerin Marble & Granite, supra.
An injured employee is entitled to receive benefits for an injury that arises out of and in the course of his employment. La. R.S. 23:1031. Compensation for temporary total disability benefits shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self employment. Knotts v. Snelling Temporaries, 27,773 (La.App.2d Cir. 12/6/95), 665 So.2d 657. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than the nonexistence. Knotts v. Snelling Temporaries, supra.
The injured employee bears the burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. Allen v. Misco Paper, 27,146 (La. App.2d Cir. 8/23/95), 660 So.2d 175. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the facts sought to be proved are more probable than not. Williams v. Jones Truck Lines, Inc., 27,465 (La.App.2d Cir. 11/1/95), 662 So.2d 867, writ not considered 95-3082 (La. 2/16/96), 667 So.2d 1044.
In order for an employee to recover, it must be determined that employment somehow caused or contributed to his disability, but it is not necessary that the exact cause be found. If an employee was in good health before an accident, his disability is presumed to have resulted from an accident if, commencing with the accident, the symptoms of the disabling conditions appear and continuously thereafter manifest themselves. For the application of a presumption of a disabling condition, there must be sufficient medical evidence to show a reasonable possibility of a causal connection between the accident and the activation of a disabling condition or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection. Smith v. Georgia-Pacific Corporation, 27,451 (La.App.2d Cir. 11/1/95), 662 So.2d 815, writ denied 95-2900 (La. 2/2/96), 666 So.2d 1103; Brown v. Blue Grass Liquor Co., 25,552 (La.App.2d Cir. 2/23/94), 632 So.2d 904.
An employee's preexisting infirmity does not disqualify his claim if the work-related injury either aggravated or combined with the infirmity to produce the disability for which compensation is claimed. When a claimant proves that, before the accident he had not manifested disabling symptoms, but *952 that commencing with the accident, the disabling symptoms appeared thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the disabling condition, a claimant's work injury is presumed to have aggravated a preexisting infirmity to produce his disability. Brown v. Blue Grass Liquor Company, supra. Whether plaintiff has carried his burden of proof and whether his testimony is credible, are questions of fact to be determined by the hearing officer. Where there are two permissible views of evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
As stated above, it is not disputed that the plaintiff suffered a back injury while working at the defendant company. However, the plaintiff has not established that the back injury caused him to be disabled or that he is physically unable to engage in any employment or self employment. The record shows that, following the back injury at issue here, the plaintiff was absent from work for approximately one week and was treated for a muscle spasm. He was then released to return to work with no restrictions. The plaintiff returned to work at the defendant company on November 21, 1993, and did not complain of back pain, nor did he seek further treatment of back pain while working at Buffington. The plaintiff, not in good health prior to the accident, complained only of his numerous other health problems, which were unrelated to the back injury. In December 1993, the plaintiff left work due to an infection at an old vasectomy site, a malady clearly unrelated to the back injury. He was released to return to work in February 1994, after treatment of the infection. At that time, the plaintiff told Mr. Buffington that he was ready to return to work. The plaintiff did not contend that he was unable to work at his old position due to back pain. The plaintiff did not seek additional treatment for his back until after Mr. Buffington told him that there was no longer a position for him at the defendant company. After he was informed that he would not be reemployed at Buffington, the plaintiff claims that he sought pipeline work and applied for jobs at numerous grocery stores, but there were no positions available.
The medical evidence shows that the plaintiff suffered a neck injury in an automobile accident in 1989, but did not receive surgical treatment for that injury. The medical evidence also shows that the plaintiff had a long history of back pain. Further, the plaintiff had a congenital anomaly in his spine, a sixth lumbar segment, which Dr. Murphy stated could be responsible for the back problems the plaintiff now claims to be experiencing. While Dr. Murphy testified that he did not think the plaintiff was able to work between February and June 1994, he did not establish a causal connection between the 1993 work injury and the plaintiff's complaints. The plaintiff then suffered two additional back injuries during March and April 1994, while under the care of Dr. Murphy.
The medical records from LSU Medical Center show that the plaintiff had degenerative changes in his spine. These records also show that in August 1995, the plaintiff had excellent range of motion which deteriorated within the next few months. However, nowhere in the medical evidence is it established that the plaintiff is disabled or that there is a connection between the plaintiff's present back complaints and the 1993 injury at work. No medical expert in this case assigned a percentage of disability to the plaintiff or made an assessment of his prognosis.
Based upon this record, we find that the hearing officer, after hearing all the evidence, some of which was conflicting, did not err in denying the plaintiff's claim for temporary total disability benefits. The plaintiff failed to show by clear and convincing evidence that he is physically unable to engage in any employment or self employment. Without such a showing, temporary total disability benefits may not be awarded. The plaintiff also failed to show by a preponderance of the evidence that he is disabled and that the disability was caused by his injury at work. The plaintiff was not in good health before the accident and therefore is not entitled to any presumption of a disabling condition. *953 Further, there is insufficient medical evidence to show a reasonable possibility of a causal connection between the accident and any activation of a disabling condition or that the nature of the accident, when combined with the facts of the case raises a natural inference through human experience of a causal connection. Accordingly, we affirm that portion of the hearing officer's decision denying the plaintiff's claim for temporary total disability benefits.

SUPPLEMENTAL EARNINGS BENEFITS
The hearing officer also denied the plaintiff's claim for supplemental earnings benefits. We find that the hearing officer's decision in this regard was correct.
To recover supplemental earnings benefits, the claimant must establish by a preponderance of the evidence that his work-related injury rendered him unable to earn 90 percent of his pre-injury wages. Once the claimant makes out a prima facie case, the burden shifts to the employer to show that claimant is physically capable of work and the work was available in that geographic area. If the employer meets that burden, then the claimant must show by clear and convincing evidence, unaided by any presumption, that he is unable to perform the offered or available employment due to substantial pain. La.R.S. 23:1221(3)(c)(ii). Brown v. Blue Grass Liquor, supra.
The plaintiff testified he was able to work and that he had sought work. He stated that he applied for pipeline jobs and for jobs at grocery stores. He also applied for work as a security guard. As stated above, the plaintiff failed to establish that he was is disabled by his work related injury. Further, the record does not show that his injury rendered him unable to earn 90 percent of his pre-injury wages. Therefore, the hearing officer did not err in finding that the plaintiff was not entitled to supplemental earnings benefits.

MEDICAL EXPENSES AND PENALTIES AND ATTORNEY FEES
The plaintiff argues that the hearing officer erred in denying his claims for medical expenses and for penalties and attorney fees. This argument is without merit.
An employer is obligated to furnish all necessary medical expenses related to a work injury. La.R.S. 23:1203; Knotts v. Snelling Temporaries, supra. An employer or insurer may be assessed with penalties unless the plaintiff's right to the benefits has been reasonably controverted by the employer or his insurer. La.R.S. 23:1201E. Reasonable attorney fees may also be assessed against an employer or insurer who fails to pay within sixty days of written notice if such failure is arbitrary, capricious and without probable cause. La.R.S. 23:1201.2.
In this case, the record shows that the defendant paid for all necessary medical treatment for the plaintiff arising from his work related injury. Further, the record shows that the plaintiff's claim to benefits was reasonably controverted and the defendant was not arbitrary or capricious or without probable cause in failing to pay the plaintiff worker's compensation benefits. Therefore, the hearing officer properly denied the plaintiff's claims for medical expenses and penalties and attorney fees.

CONCLUSION
For the foregoing reasons, the decision of the worker's compensation hearing officer, in favor of the defendant, Buffington Corporation, rejecting the demands of the plaintiff, Scott Weeks, is affirmed. Costs are assessed to the plaintiff.
AFFIRMED.