741 So.2d 143 (1999)
Gene H. HARRIS, Plaintiff-Appellant,
v.
COUSHATTA INDUSTRIAL SAND, INC., Defendant-Appellee.
No. 31,977-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 16, 1999.
*145 Charles W. Seaman, Natchitoches, Counsel for Appellant.
Patricia L. Barfield, Baton Rouge, Counsel for Appellee.
Before STEWART, GASKINS and KOSTELKA, JJ.
STEWART, J.
The hearing officer for the Office of Worker's Compensation ("OWC") denied Gene Harris' ("Harris") claim for benefits upon finding that he failed to prove a causal connection between his current health problems and his 1994 work-related heart attack. Harris now appeals this ruling. We affirm.

FACTS
On August 20, 1994, Harris suffered a heart attack while in the course and scope of his employment with Coushatta Industrial Sand, Inc., ("Coushatta"). Harris has not returned to work since his 1994 heart attack. Coushatta refused to pay worker's compensation benefits as it believed Harris' condition was not work-related. Harris had previously suffered a heart attack on April 17, 1993, while working for another employer.
In November 1994, Harris filed a claim for benefits with the OWC. The hearing officer determined that Harris' heart attack was work-related and awarded temporary total disability benefits for the six weeks following the August 1994 heart attack. The ruling reserved Harris' right to seek additional benefits at a later date. On March 10, 1997, Harris filed a second claim for benefits with the OWC. The hearing on Harris' claim was held on April 21, 1998. At issue was whether Harris' 1994 heart attack caused him to be disabled beyond the six weeks following the heart attack. Three witnesses testified at the hearing.
Harris, who was 57 years old at the time of the hearing, testified that after his 1993 heart attack he drove an 18-wheeler for Charles Shaw Timber Company, where he remained employed for about one year, and then went to work for Coushatta as a dump truck driver. Harris stated that he did not have any trouble working full-time prior to the 1994 heart attack. Since the 1994 heart attack, he has been unable to work due to chest pains and shortness of breath. Harris testified that he is no longer able to drive an 18-wheeler, that he can do very little work around his house, that he can only walk about a block before becoming short of breath, and that he cannot sit for any length of time without having to stand to alleviate the chest pains. Harris also stated that the shortness of breath interrupts his sleep at night and that he has chest pains almost every day. Harris explained that his medication affects his ability to concentrate. He admitted that he quit taking his blood pressure medication at one time; however, he explained that he quit because he could not afford the medication. The parties stipulated that Harris' wife and daughter would testify in conformity with him regarding his complaints of pain and the limitations on his activities.
Dr. Zanam Gahli, a cardiologist at LSU Medical Center and Harris' treating physician, testified on Harris' behalf. Dr. Gahli began treating Harris in 1994 and did not have records on Harris' medical condition prior to 1994. At the time of the hearing, Dr. Gahli had last seen Harris in January 1998, at which time Harris was physically limited by fatigue and suffered intermittent angina pains. Dr. Gahli's diagnosis of Harris included hypertension, coronary artery disease, heart failure, hypercholesterolemia, asthma, and obesity. Dr. Gahli explained that one part of Harris' heart is impaired by ischemia, meaning that it is not getting enough blood, and one part is non-functioning, resulting in weakness of the heart muscle and reduction in the amount of blood pumped. Dr. Gahli referred to a heart catheter from June 1997 which showed Harris' left ventricular function to be 30% (severely reduced) and to *146 an April 1997 stress test which showed that part of Harris' heart was not getting enough blood.[1]
Dr. Gahli opined that Harris is disabled and has been since 1994. Dr. Gahli testified that Harris' 1994 heart attack was a contributing factor to his current disability, but not the sole factor. However, Dr. Gahli was unable to quantitate the extent to which the 1994 heart attack factored into Harris' current disability. Dr. Gahli explained that the 1994 heart attack severely impaired the systolic, or squeezing, function of Harris' heart, particularly the left ventricular function. Dr. Gahli did not relate impairments in other parts of Harris' heart to the 1994 heart attack. Dr. Gahli stated that there has been no significant improvement in Harris' heart function since 1994. Although he did not have records prior to 1994, Dr. Gahli expressed the opinion that Harris' coronary disease predates the 1994 heart attack and explained that coronary disease is related to impairments in pumping. Dr. Gahli further stated that Harris would probably be less disabled if he exercised more, but his condition limits his ability to exercise. Dr. Gahli believed that Harris could do work that does not involve exertion, such as a desk job.
Dr. Clementor Eiswirth, a cardiologist with special training in the fields of congestive heart failure and cardiac transplantation, testified on behalf of Coushatta. Although Dr. Eiswirth did not examine Harris or discuss Harris' condition with Dr. Gahli, Dr. Eiswirth did review many of Harris' medical records from 1985 through June 1997. Dr. Eiswirth did not believe he would receive any benefit from examining Harris since the medical records were fairly complete.
Dr. Eiswirth testified that the chest pains experienced by Harris in August 1994 were not a "through and through" heart attack, but that the pains were a milder form of heart attack. He described Harris' 1993 heart attack, which occurred in the same area as the 1994 heart attack, as a "through and through" heart attack that was moderate to large. Dr. Eiswirth stated that Harris suffers from cardiomyopathy (weakness of the heart muscle), hypertension, coronary artery disease, congestive heart failure, and high cholesterol. Dr. Eiswirth opined that Harris' cardiomyopathy is due to uncontrolled hypertension and noted that Harris' hypertension has been documented since 1990. Dr. Eiswirth also related Harris' current problems to possible noncompliance with his medication and recommended treatments, such as exercise and weight loss.
Dr. Eiswirth insisted that any current disability is not related to the 1994 heart attack. Dr. Eiswirth did not believe that the 1994 heart attack had any effect on Harris' heart because Harris' heart function was the same when he left the hospital as when he entered. Dr. Eiswirth stated that a May 1995 echocardiogram indicated normal left ventricular function and that a June 1997 angiogram indicated normal heart function, except for a mild left ventricular dysfunction which left the overall heart function only mildly reduced. According to Dr. Eiswirth, the angiogram disproved the problems indicated by the stress test referred to by Dr. Gahli. Dr. Eiswirth also stated that the normal function indicated by the June 1997 angiogram probably meant that Harris had no disability at that time. Dr. Eiswirth did not give an opinion on Harris' present degree of disability, stating that he had no records of objective or functional data from which such a determination could be made.
After listening to the testimony, the hearing officer denied Harris' claim for *147 benefits as she found that Harris failed to prove that his present problems were caused by his 1994 heart attack or that he is any more disabled now than he was before the 1994 heart attack. The hearing officer noted that Harris had pre-existing conditions at the time of the 1994 heart attack. The hearing officer also noted that Dr. Gahli was "not overly convincing" and particularly referred to the fact that he could not say how much the 1994 heart attack factored into Harris' current condition. The hearing officer also referred to the fact that Dr. Eisworth, although admitting that there were some problems, was adamant about the lack of connection between the 1994 heart attack and Harris' current condition.

DISCUSSION
An injured employee is entitled to receive benefits for an injury that arises out of and in the course of his employment. La. R.S. 23:1031. The injured employee bears the initial burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. The claimant is not required to establish the exact cause of the disability, but the claimant must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Quinones v. USF & G, 93-1648 (La.1/14/94), 630 So.2d 1303; Allen v. Misco Paper, 27,146 (La.App. 2nd Cir. 8/23/95), 660 So.2d 175. Proof by a preponderance of the evidence exists when the evidence, taken as a whole, shows the facts sought to be proved are more probable than not. Weeks v. Buffington Corp., 28,507 (La.App. 2nd Cir. 8/21/96), 679 So.2d 946; Bradley v. Manville Forest Products, 616 So.2d 280 (La. App. 2nd Cir.1993).
The causal connection can be established when the employee proves that before the accident he was in good health, but commencing with the accident symptoms of the disabling condition appeared, and there is sufficient medical evidence to show a reasonable possibility of a causal connection between the accident and the disabling condition. Quinones v. USF & G, supra; Allen v. Misco Paper, supra. However, an employee's pre-existing condition does not disqualify his claim if the work-related injury either aggravated or combined with the infirmity to produce the disability for which compensation is claimed. Weeks v. Buffington Corp., supra; Bradley v. Manville Forest Products, supra. When the claimant proves that he had no disabling symptoms before the accident, but that commencing with the accident, the disabling symptoms appeared, and there is medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the disabling condition, a claimant's work injury is presumed to have aggravated a pre-existing infirmity to produce his disability. Weeks v. Buffington Corp., supra; Bradley v. Manville Forest Products, supra.
Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer. Weeks v. Buffington Corp., supra. The hearing officer's factual findings are subject to the manifest error standard of review. Jackson v. Creger Automotive Co., Inc., 29,249 (La.App. 2nd Cir. 4/2/97), 691 So.2d 824, writ denied, 97-1436 (La.9/26/97), 701 So.2d 984. When there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993); Weeks v. Buffington Corp., supra.; Allen v. Misco Paper, supra.
The hearing officer was required to determine whether Harris established a causal connection between the 1994 work-related heart attack and his current disabling symptoms. Harris testified that the 1994 heart attack left him with recurrent chest pain and shortness of breath and that he is unable to work because of these problems. Although Dr. Gahli testified *148 that Harris is disabled and that the 1994 heart attack was a factor which contributed to the current disability, Dr. Gahli was unable to say to what extent the heart attack contributed to Harris' current condition. Dr. Gahli's testimony that the 1994 heart attack contributed to Harris' current disability is based on his belief that the heart attack damaged Harris' heart. However, this belief is directly contradicted by Dr. Eiswirth's testimony which was based on his assessment of Harris' medical records dating back to the mid-eighties. Dr. Eiswirth testified that Harris' current condition was not caused by the 1994 heart attack. According to Dr. Eiswirth, the 1994 heart attack was not severe and did not result in significant damage to Harris' heart. Dr. Eiswirth also testified that various tests conducted on Harris' heart since the 1994 heart attack showed the heart functioning at an almost normal rate. Although Dr. Gahli explained that a June 1997 test result, which was referred to by Dr. Eiswirth, was probably incorrect and should indicate a lower functioning of the heart based on his visual estimation during the test, this test result was never verified in accordance with Dr. Gahli's instructions. Dr. Eiswirth attributed Harris' current problems to hypertension, a condition documented since 1990 and preceding both heart attacks, and to Harris' failure to take proper care of himself, specifically regarding his failure to take medication regularly and lack of exercise. Faced with opposing permissible views of the evidence presented by the testimony, the hearing officer credited the testimony of Dr. Eiswirth and determined that Harris failed to establish a causal connection between his current physical problems and his 1994 heart attack. We cannot say that the hearing officer was clearly wrong.
While the opinion of a treating physician is generally accorded greater weight than that of a physician retained for trial purposes, the testimony of a treating physician can be rebutted and must be weighed with all other credible evidence. Jackson v. A.I.A., 94-371 (La.App. 5th Cir. 11/16/94), 646 So.2d 1088; Freeman v. Rew, 557 So.2d 748 (La.App. 2nd Cir.1990), writ denied, 563 So.2d 1154 (La.1990). A trial court is not bound to accept the testimony of an expert whose testimony is presumptively given more weight if the court finds the opinion less credible than that of another expert. Davison v. Horseshoe Casino, Inc., 31,166 (La.App. 2nd Cir. 10/28/98), 720 So.2d 785.
The hearing officer stated that she did not find Dr. Gahli, Harris' treating physician, "overly convincing." Thus, the hearing officer determined Dr. Gahli to be a less credible witness than Dr. Eiswirth. Harris argues that the hearing officer erred in relying on Dr. Eiswirth's testimony because Dr. Eiswirth never met or examined him and never discussed his treatment with his physician. However, the fact that Dr. Eiswirth never examined Harris or discussed Harris' condition with his treating physician does not render the hearing officer's decision erroneous. Dr. Eiswirth reviewed Harris' medical records, including records pre-dating both heart attacks and including records of tests conducted after the 1994 heart attack. Dr. Gahli did not have any medical records prior to 1994. The record reveals that Dr. Eiswirth's testimony regarding Harris' condition was as knowledgeable and detailed as that provided by Dr. Gahli. Furthermore, Dr. Eiswirth specifically addressed Harris' objection by stating that the records he reviewed appeared fairly complete and that he would have received no additional benefit from examining Harris. In a case such as this where the test results reveal a great deal about the patient's condition, there is no necessity for the medical expert to actually examine the claimant in order to give credible testimony regarding his condition. Dr. Eiswirth's review of the medical records suffices as a basis for credible testimony regarding Harris' condition upon which the hearing officer could rely in ruling on this matter. We find no clear error in the hearing *149 officer's reliance on Dr. Eisworth's testimony.
After weighing the evidence and assessing credibility, the hearing officer found that Harris failed to establish, by a preponderance of the evidence, a causal connection between his 1994 heart attack and his current condition. Based on the record, we find no manifest error in this determination.

CONCLUSION
For the foregoing reasons, we affirm the denial of benefits. Costs of this appeal are assessed against the appellant, Gene Harris.
AFFIRMED.
NOTES
[1] According to Dr. Gahli, the 1997 heart catheter showed a 45% ejection fraction or reduction in ventricular function. However, Dr. Gahli stated that his visual estimation was that the ejection fraction was actually 30%, indicating a more severe impairment. Dr. Gahli explained that he ordered verification and correction of the test, but that it had not yet been done.