759 So.2d 1074 (2000)
Glemia THOMPSON, Plaintiff-Appellant,
v.
DILLARD'S DEPARTMENT STORE, Defendant-Appellee.
No. 32,974-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 2000.
*1075 Ronald J. Miciotto, Shreveport, Counsel for Plaintiff-Appellant.
Hurlburt, Privat & Monrose by Shannon Seiler Dartez, Lafayette, Counsel for Defendant-Appellee.
Before BROWN, CARAWAY and DREW, JJ.
DREW, J.
Glemia Thompson appealed the dismissal of her claim by the Worker's Compensation Judge (WCJ) who denied her benefits after finding that Thompson failed to prove that her 1996 work-related accident caused an aggravation of her pre-existing back condition. We affirm.

*1076 FACTS AND PROCEDURAL BACKGROUND

On October 28, 1996, Thompson was employed by Dillard's Department Store (Dillard's) as a sales associate. While she was placing merchandise for display, Thompson slipped and fell, landing on her hip. She continued working, but later in the day went to the emergency room at Schumpert Medical Center. Thompson complained to emergency room personnel of pain in her knee, foot, and hand, but made no complaints of neck or back pain.
The next day, Thompson saw Dr. John Ferrell, an orthopedic surgeon who had treated her since June of 1993 for health conditions further discussed below. On this visit to Dr. Ferrell, Thompson complained primarily of wrist pain and also of injuries to her ankle and knee. Dr. Ferrell's notes do not reflect that Thompson complained of back pain on this date. On November 8, 1996, Thompson again saw Dr. Ferrell and complained of pain in her leg, hip, shoulder, and neck. Dr. Ferrell's notes do not indicate that she complained of back pain on this visit.
Initially, Dillard's paid for Thompson's medical expenses and she received worker's compensation benefits. Subsequently, however, Dillard's disputed Thompson's claim that her work-related accident had aggravated her pre-existing back injuries and rendered her unable to return to work. When Thompson's wrist, knee and ankle injuries reached maximum medical improvement, Dillard's refused to pay for any further medical treatment and Thompson's benefits were terminated.
Thompson submitted a claim for benefits to the Office of Worker's Compensation. The matter was tried before the WCJ on December 3, 1998. Thompson and a vocational rehabilitation expert testified live; all medical evidence was submitted via exhibits and deposition testimony.
On February 8, 1999, the WCJ issued Judgment and Written Reasons for Judgment. The WCJ denied Thompson's claim, finding that she failed to meet her burden of proof that her October 28, 1996 accident caused any disability from which she may suffer. Further, the WCJ found that Thompson was not disabled. The WCJ cited Thompson's lengthy history of accidents and back problems for which she had sought medical treatment since 1993. Also, the WCJ stressed that Thompson did not complain of injury to or pain in her back when she was examined at the Schumpert emergency room or on her first two visits to Dr. Ferrell after the accident. Basing the finding on the record as a whole, the WCJ found that the accident of October 28, 1996, did not cause an aggravation of Thompson's pre-existing injury and did not render Thompson disabled.
Thompson appealed, arguing that the WCJ committed manifest error by disregarding clear evidence that her pre-existing condition was severely exacerbated by her work-place injury. Specifically, Thompson urged that the WCJ favored biased medical testimony over the testimony of Thompson and her treating physician.

APPLICABLE LAW
An injured employee is entitled to receive benefits for an injury that arises out of and in the course of his employment. La. R.S. 23:1031. The injured employee bears the initial burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. The claimant is not required to establish the exact cause of the disability, but the claimant must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Quinones v. USF & G, 93-1648 (La.1/14/94), 630 So.2d 1303; Allen v. Misco Paper, 27,146 (La.App.2d Cir.8/23/95), 660 So.2d 175. Proof by a preponderance of the evidence exists when the evidence, taken as a whole, shows the facts sought to be proved are more probable than not. Harris v. Coushatta Industrial Sand, Inc., 31,977 (La. App.2d Cir.6/16/99), 741 So.2d 143; Weeks *1077 v. Buffington Corp., 28,507 (La.App.2d Cir.8/21/96), 679 So.2d 946.
The causal connection can be established when the employee proves that before the accident he was in good health, but commencing with the accident, symptoms of the disabling condition appeared, and there is sufficient medical evidence to show a reasonable possibility of a causal connection between the accident and the disabling condition. Quinones v. USF & G, supra; Allen v. Misco Paper, supra. However, an employee's pre-existing condition does not disqualify his claim if the work-related injury either aggravated or combined with the infirmity to produce the disability for which compensation is claimed. Harris, supra; Weeks, supra. When the claimant proves that he had no disabling symptoms before the accident, but that commencing with the accident, the disabling symptoms appeared, and there is medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the disabling condition, a claimant's work injury is presumed to have aggravated a preexisting infirmity to produce his disability. Weeks, supra; Harris, supra.
Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer. Harris, supra. Factual findings in worker's compensation cases are subject to the manifest error rule. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129; Harris, supra. Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993); Graham v. Georgia-Pacific Corp., 26,165 (La.App.2d Cir.9/23/94), 643 So.2d 352.

DISCUSSION
Thompson argued that the WCJ disregarded her testimony and that of Dr. Ferrell in favor of the other medical testimony presented. Thompson urged that, because Dr. Ferrell was her treating physician, the WCJ should have given greater weight to his testimony that she suffered an aggravation of her pre-existing back condition. On the record presented, we find reasonable the WCJ's conclusion that Thompson did not suffer an aggravation of her preexisting condition.
The WCJ was presented with extensive medical evidence regarding Thompson's medical history. The record indicates that Thompson first sought medical treatment from Dr. Ferrell in June 1993, for injuries she received two months earlier when she fell off a ladder. At this time, Thompson complained of back pain.
On July 21, 1993, Thompson was the driver of a vehicle which flipped over during an accident. She was treated at Natchitoches Parish Hospital for numbness in her head and swelling and pain in her left wrist.
On March 21, 1995, Thompson sought medical treatment from Dr. James May, a general physician. She complained to Dr. May that her back pain was taking "a toll" on her and that she needed a prescription for Xanax to manage the pain.
In March 1996, Thompson was a passenger in a vehicle which was struck by a van. The following month, she sought treatment from Dr. Ferrell, complaining of neck and back pain. Dr. Ferrell prescribed an antiinflammatory and recommended physical therapy.
In April 1996, Thompson began physical therapy at Tietjen Physical Therapy. Among other complaints, she reported to the physical therapist that she suffered central low back pain and neck pain. Thompson had approximately 25 physical therapy sessions at Tietjen between April 1996 and October 1996 to relieve her neck and back pain, in addition to treating other symptoms.
Thompson returned to Dr. Ferrell complaining of neck and back pain in April, May, June, July and September of 1996. *1078 During the course of these visits, Dr. Ferrell recommended, on three separate occasions, that Thompson undergo an MRI to determine the basis of her complaints. Thompson, however, refused the MRI.
Thompson's complaints of back pain continued throughout 1996. On the morning she suffered her work-related fall at Dillard's, she had undergone physical therapy at Tietjen for neck and back pain.

Testimony of Medical Experts
The WCJ was presented with conflicting medical opinions regarding whether the work-related fall aggravated Thompson's pre-existing back condition. Dr. Ferrell testified that, after the fall at Dillard's, Thompson's complaints of back pain after the accident indicated pain of a more acute nature. The doctor acknowledged that her symptoms did not change much and nothing physical indicated the fall at Dillard's caused an aggravation. Basing his conclusion solely on Thompson's complaints of increased pain, Dr. Ferrell stated he thought that Thompson did suffer an aggravation of her pre-existing back condition, because her whole body got worse "not from an objective standpoint but from ashe just really went downhill."
The other medical experts who testified, however, reached the contrary conclusion. Dr. Phillip Osborne, an expert in occupational medicine, examined Thompson on March 31, 1997, at the request of Dillard's. His opinion was that Thompson was exaggerating her complaints and that she did not suffer an aggravation of her pre-existing problem. Dr. Edwin Simonton, Jr., who was appointed by the Office of Worker's compensation to examine Thompson, reached a similar conclusion. He reviewed Thompson's medical records and examined Thompson on two occasions. In Dr. Simonton's opinion, (1) Thompson was magnifying her symptoms; and (2) the fall at Dillard's did not cause an aggravation of her pre-existing back condition.
Thompson argued that because Dr. Ferrell was her treating physician, the WCJ should have given his testimony more weight and found that the work-related accident aggravated Thompson's pre-existing back condition. Such a finding is not mandated, however. While the testimony of a treating physician is generally accorded greater weight than that of a physician retained for trial purposes, the testimony of a treating physician can be rebutted and must be weighed with all other credible evidence. Harris, supra; Freeman v. Rew, 557 So.2d 748 (La.App. 2d Cir.1990), writ denied, 563 So.2d 1154 (La.1990). A trial court is not bound to accept the testimony of an expert whose testimony is presumptively given more weight if the court finds the opinion less credible than that of another expert. Harris, supra; Davison v. Horseshoe Casino, Inc., 31,166 (La.App.2d Cir.10/28/98), 720 So.2d 785, writ denied, 98-2950 (La.1/29/99), 736 So.2d 833.
We cannot say the WCJ was manifestly erroneous in giving greater weight to the opinions of Dr. Osborne and Dr. Simonton than to Dr. Ferrell's opinion and in resolving the conflicting testimony by finding that Thompson's fall did not aggravate her pre-existing back injury. The record contained voluminous evidence regarding Thompson's medical condition, including reports detailing her lengthy history with back problems, her failure to report back pain immediately after her fall, and the conflicting opinions of the medical experts. After weighing the evidence and assessing credibility, the WCJ found that Thompson failed to establish, by a preponderance of the evidence, that her 1996 work-related fall caused an aggravation of her pre-existing condition or any disability. We find no manifest error in this determination, which is reasonable, based on our review of this record.

DECREE
For the foregoing reasons, we affirm the judgment in favor of Dillard's Department Store and which dismissed the claim of *1079 Glemia Thompson. Costs of this appeal are assessed against Glemia Thompson.
AFFIRMED.