830 So.2d 576 (2002)
Donald Ray PEARCE, Plaintiff-Appellant,
v.
MEDALLION CONSTRUCTION, Defendant-Appellee.
No. 36,351-WCA.
Court of Appeal of Louisiana, Second Circuit.
November 6, 2002.
*577 Donald Ray Pearce, In Proper Person.
Hudson, Potts & Bernstein, L.L.P., by Jan P. Christiansen, for Appellees Medallion Construction and Louisiana Workers Compensation Corp.
Before STEWART, GASKINS and HARRISON (Pro Tempore), JJ.
GASKINS, J.
The claimant, Donald Ray Pearce, appeals from a decision by a worker's compensation judge (WCJ) that found that he failed to prove a work-related accident causing injury. We affirm.

FACTS
On June 15, 1998, the claimant filed a disputed claim for compensation with the *578 Office of Workers' Compensation in which he asserted that he had injured his lower back on March 20, 1998, while installing French doors in the course and scope of his employment with Medallion Construction. Thereafter, the matter was set for trial on December 22, 1998. When the claimant failed to appear for trial, the WCJ dismissed his case with prejudice. However, in an unpublished opinion, this court vacated the dismissal with prejudice and remanded the matter for further proceedings. Pearce v. Medallion Construction, 32,989 (La.App.2d Cir.4/5/00), 761 So.2d 818.
Following the remand, the case was tried in August 2001. The parties stipulated that the claimant was employed by Medallion on March 20, 1998. The claimant attempted to introduce a letter from Dr. Mark Vigen, the customer at whose home the claimant was working at the time of the alleged injury. Counsel for the defendants, Medallion Construction and Louisiana Workers' Compensation Corporation, made a successful hearsay objection to its introduction.[1] The claimant, who was proceeding in proper person, testified, as did his wife. He also introduced the deposition of Dr. Thomas Morrill. The defendants introduced the depositions of Angela Morgan, a nurse who worked for Dr. Morrill and of Herman Tipton, the Medallion salesman in charge of the work at Dr. Vigen's house.[2] Additionally, the defendants introduced the claimant's medical records from Dr. William Wisner, Dr. Terry Sobey, Presbyterian Hospital of Dallas, and Mesquite Community Hospital.
The WCJ rendered her ruling on October 12, 2001. Three issues were presented for her consideration: (1) whether the claimant proved that he sustained an accident in the course and scope of his employment with Medallion on March 20, 1998; (2) whether the claimant violated La. R.S. 23:1208, pertaining to misrepresentations concerning benefit payments, and thereby forfeited all rights to workers' compensation benefits; and (3) if there was no forfeiture of rights, whether the claimant was entitled to benefits, including temporary total disability. As to the first issue, the WCJ concluded that the claimant had failed to carry his burden of proving a work-related injury by a preponderance of the evidence. Consequently, consideration of the remaining two issues was pretermitted.
The claimant appeals.

LAW
An injured employee is entitled to receive benefits for an injury that arises out of and in the course of his employment. La. R.S. 23:1031. The injured employee bears the initial burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. The claimant is not required to establish the exact cause of the disability, but the claimant must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Thompson v. Dillard's Department Store, 32,974 (La.App.2d Cir.5/10/00), 759 So.2d *579 1074. Proof by a preponderance of the evidence exists when the evidence, taken as a whole, shows the facts sought to be proved are more probable than not. Harris v. Coushatta Industrial Sand, Inc., 31,977 (La.App.2d Cir.6/16/99), 741 So.2d 143; Weeks v. Buffington Corporation, 28,507 (La.App.2d Cir.8/21/96), 679 So.2d 946.
While the worker's testimony alone may be sufficient to discharge that burden, it will be inadequate where (1) other evidence discredits or casts serious doubt upon the worker's version of the incident; or (2) the worker's testimony is not corroborated by the circumstances following the alleged incident. Clay v. Delphi Interior & Lighting Systems, 34,242 (La.App.2d Cir.12/22/00), 775 So.2d 1207.
Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer. Thompson, supra. Factual findings in worker's compensation cases are subject to the manifest error rule. Smith v. Louisiana Department of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129. Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993); Graham v. Georgia Pacific Corporation, 26,165 (La.App.2d Cir.9/23/94), 643 So.2d 352.

EVIDENCE
The evidence at trial demonstrated that the claimant had a lengthy and extensive medical history involving numerous injuries. In 1974, he sustained a neck injury in a car wreck. In 1977, he suffered bruises and scrapes in another auto accident. In 1979, he developed thoracic outlet syndrome as the result of a work-related incident. In 1983, in another work-related accident, he tore biceps in his right shoulder and crushed vertebrae at the T9 and T10 level and bulged disks at T9 thru T11 levels. In 1984, in yet another work-related incident, he was treated for bulging disks at L3, L4, L5, and S1.
Records from Presbyterian Hospital of Dallas show that the claimant underwent two carpal tunnel surgeries in 1984. They also reveal a history of a motorcycle accident in May 1985.
According to Dr. Morrill's records, the claimant became his patient in April 1990. Sometime in 1992, he tore a rotary cuff in his right shoulder in a car wreck. In November 1992, the claimant complained of chronic lumbar pain. In August 1993, he sought treatment for muscle spasms of the right shoulder. Again in May 1996, he complained of neck and back muscle spasms of three months duration.
Mesquite Community Hospital records disclose that the claimant sought treatment on November 1, 1996, for back pain following a motor vehicle accident the night before. Evidence of early degenerative changes in the cervical and thoracic spine were noted. He saw Dr. Morrill on November 2, 1996, with complaints of mid-back pain; he was given prescriptions for Soma, a muscle relaxer, and Vicodin, a narcotic for pain. In December 1996, the claimant sought treatment from Dr. Terry Sobey for injuries sustained in the October 31st auto accident. He complained of acute lumbar, cervical and thoracic strain on December 4; on December 18, he stated that he especially had pain in his low back. On December 20, he was seen by a physical therapist and reported that the pain started in the mid-back and neck areas, then spread down the lower back. At that time, his mid-back and hips hurt most. In January 1997, he underwent a whole body bone scan and an MRI; the *580 results showed degenerative changes from T12 to L2.
On April 6, 1998, the claimant saw Dr. Morrill with complaints of back pain of one and a half week duration. The chart entry on this date is of particular importance. Under "Subjective" the nurse, Angela Morgan, wrote, "hx [history]: ruptured disc, cc: back pain × 1½ wk." The entry went on to report the claimant's statement that he could not bend or move for three days. Under "Other" the doctor wrote, in relevant part, "was at party Sat.girl jump into armshas acute pain." The depositions of Dr. Morrill and Nurse Morgan demonstrate that the office procedure was for the nurse to initially speak to the patient, record his complaints and vital signs in the chart, and then leave the chart in the door for the doctor, who entered after the nurse departed. No mention of the alleged accident involving installation of Dr. Vigen's French doors was recorded.[3] The doctor prescribed Soma and Vicodin.
The claimant saw Dr. Morrill with complaints of back pain on May 5, June 4, July 2, August 5 and September 3, 1998. The doctor continued his prescriptions; eventually the Vicodin prescription was changed to Norco, another narcotic. On September 15, 1998, Dr. Morrill signed a physician's statement which indicated that the claimant was injured "lifting French doors" and that he was totally disabled. The claimant continued to see Dr. Morrill monthly until August 2000; Dr. Morrill required patients on narcotics to be seen monthly. In July 2000, Dr. Morrill informed the claimant that, due to a philosophy change in his practice, he would no longer continue to write controlled medication prescriptions for him. Dr. Morrill's chart entries also reveal that on September 21, 1999, the claimant reported being injured in a motor vehicle accident three weeks before; he complained of stiffness to the lower back, neck and shoulders.
The records of Dr. William Wisner recounted that the claimant first saw him on March 26, 1999, following an auto collision on March 6, 1999. His major complaint was of pain in the cervical and upper thoracic areas with radiation across into the left shoulder, arm and forearm with numbness, weakness and an ache into the arm. He also claimed pain across his low back with radiation into the left thigh and calf with some weakness in the lower extremity. According to the chart notes, he was working part-time, usually two to three days per week since the accident. The medical history he gave to Dr. Wisner consisted of an old injury in 1992; two surgeries on his right shoulder; several minor injuries since that time that had become asymptomatic; and a 1981 lumbar injury with fracture of T10-11 vertebrae which became asymptomatic after treatment. The chart further recounts that he reported having had "no problem since 1986." Some occasional discomfort was treated by Motrin. There is no mention of a work-related accident in March 1998 in Dr. Wisner's medical records.[4]
*581 DISCUSSION
In determining whether the claimant had carried his burden of proving a work-related accident on March 20, 1998, the WCJ was required to evaluate the credibility of the witnesses, especially that of the claimant himself. The WCJ concluded that the claimant's credibility was "quite lacking." The WCJ noted that Dr. Morrill's chart note of April 6, 1998, recited a history given by the claimant of being injured at a party when a girl "jumped into his arms." Based upon the testimony of Dr. Morrill and Nurse Morgan, the WCJ did not believe that the claimant reported a work-related accident to them on that date. As a result, she discounted Dr. Morrill's subsequent letters, in which the doctor attempted to correct what the claimant had represented to him as an error in his records.
Another factor influencing the WCJ's evaluation of the claimant's credibility was his failure to mention the alleged March 1998 work-related accident to Dr. Wisner at the onset of his treatment following his March 1999 car accident. Once again, the claimant asserted that the same incident was erroneously omitted by the medical personnel recording his medical history.
The WCJ also relied upon the testimony of Mr. Tipton, who stated that the claimant did not inform him of the alleged injury until 30 to 60 days after the Vigen job was completed. While the WCJ did not dispute that the claimant had injuries, she found that the claimant received those injuries due to the girl jumping in his arms at the party, not as a result of a work-related incident arising out of his employment with Medallion.
We find no manifest error in the conclusions of the WCJ, who carefully reviewed and painstakingly evaluated all of the evidence admitted at trial. Although the claimant testified that he sustained an injury as the result of an unwitnessed work-related accident, other evidence cast doubt upon his account and his testimony was not corroborated by the circumstances following the alleged incident. Under the facts presented, the WCJ's findings of fact and credibility determinations were reasonable. Accordingly, we affirm.

CONCLUSION
The decision of the worker's compensation judge is affirmed. Costs in this court are assessed against the appellant, Donald Ray Pearce.
AFFIRMED.
NOTES
[1] The letter was hearsay under La. C.E. art. 801; the WCJ correctly sustained the defendants' objection and excluded it from evidence pursuant to La. C.E. art. 802.
[2] The claimant objected to the admission of Mr. Tipton's trial deposition on the basis that he was not given proper notice. However, the WCJ found that the claimant, who participated in the telephone deposition, had received proper notice. The WCJ further found that admission of the deposition was proper under La. C.C.P. art. 1450(A)(3)(b) because Mr. Tipton lived more than 100 miles away. We find no abuse of discretion in the WCJ's ruling.
[3] Several letters were later written by Dr. Morrill stating that his chart notes were incomplete because the nurse failed to record statements by the claimant pertaining to the alleged work-related accident. However, Dr. Morrill wrote these letters at the behest of the claimant and without first consulting with the nurse as to what had actually happened. Both Dr. Morrill and Nurse Morgan testified that they had no independent recollection of the April 6 visit. Nonetheless, Nurse Morgan testified that if the claimant had told her of a certain incident causing pain, she would have recorded it in the chart. Consequently, after considering all of these factors, the WCJ was unimpressed with the claimant's reliance upon Dr. Morrill's amended records to support his claim that he was injured in a work-related accident.
[4] The claimant testified that he told Dr. wisner about all of his accidents and that Dr. Wisner's records were incomplete. However, he conceded that, after learning of this alleged error, he did not inform the car insurer from whom he had received a settlement for the March 1999 auto accidentthat Dr. Wisner's records were wrong.