hHARRISON, Judge Pro Tempore.
The claimant, James Davis Jr., appeals a judgment rejecting his claim for workers’ compensation benefits. He contends the Workers’ Compensation Judge (“WCJ”) committed manifest error in failing to find that he proved a work-related injury. For the reasons expressed, we affirm.

Factual background

Davis, a construction worker, testified that shortly before Christmas 1998, he was working for T.A. Miller Inc., a construction company, in Natchitoches, Louisiana. He testified that he injured himself while assisting a jackhammer operator in a manhole. He described his work as holding one end of a nylon rope; the other end was supporting the 90-pound jackhammer being used by the operator. He said that the rope “had got to cutting my hand” and *1190 “my hands hurting, I was swapping hands.” He also had his head against a wall for part of the time he was holding the rope. He said that when he was finished with this job, his hands were numb and his left arm hurt, but his neck did not. Mr. G.P. Prudhomme, the job superintendent for Miller at that site, testified that Davis did not make any complaints of pain as a result of working in the manhole or after climbing on any machinery.
Davis testified that prior to this incident, he never injured or had any pain in his left arm; however, his arm “never quit hurting” afterwards. On December 31, 1998, he returned to work, operating a bulldozer. He testified that once when he grabbed a handle to get up onto the bulldozer, he felt “like an electrical storm went off’ in his left arm. He testified that he has been unable to work since that day because of pain and weakness in his left | ?arm. In fact, he testified that after that day he “laid down” because he was “hurting so bad. The pain had got so bad I couldn’t get out and do anything.”
Despite this severe pain, Davis did not see a doctor until February 3, 1999 when he went to the emergency room at LSU Medical Center in Shreveport. He explained this delay by stating he was unable to get an appointment until January 28, and that the hospital later changed it to the middle of February. The hospital’s records from February 3 reflect:
Context: Patient was resting, occurred during exertion, occurred while at work. Pt states he nearly fell off a piece of machinery at work but caught hisself [sic] with his left arm. This is the only significant trauma he remembers. The date of this occurrence was last week.
Davis testified that he told the doctors he injured himself while jackhammering and, as for the bulldozer incident, he testified he caught himself with his right arm. However, the first reference to the jackhammer in Davis’s medical records does not occur until nearly a year later, on January 12, 2000.
Davis testified that he told Mr. Miller about his injury on February 18, 1999, over the phone from the doctor’s office, but Mr. Miller did not respond to this information. Davis said that he called the employer again in June and got no response. Finally, in November, he phoned and someone told him to leave information about his claim on the voice mail of a Mr. James Howell. Davis said he did so but never got any reply.
To the contrary, Ms. Larocca, Mr. Miller’s receptionist during the time in question, testified that she never received any phone calls from |3Pavis reporting an injury (she admitted that other office workers might have taken the call without her knowledge). Mr. Howell testified that he did not remember receiving any messages from Davis. Mr. Miller, the owner of the company, said that neither he nor any of his employees knew about Mr. Davis’s alleged injury until they were served with the petition.
Miller paid no medical bills or indemnity benefits. Davis continued medical treatment in 1999, however, appearing at LSU Medical Center on February 19 and March 8 with complaints of pain in his left arm. A nerve conduction test on April 29 noted this impression: “The patient appears to have compression of the ulnar nerve probably in the region of the elbow.” LSU records from June 2 show notations of “no complaint today” and “numbness in [left] arm resolved.”
Davis returned to LSU in January 2000 with complaints of weakness and numbness in his left hand, and a February 2000 report objectively confirmed some diminished sensation in the left hand. An EMG report from April 12, 2000 found, inter alia:
*1191 The only abnormality seen on today’s study was some slowing in the sensory median and the mid palm to wrist segment which would be compatible with some degree of Carpal Tunnel Syndrome. * * *
I’d have to say that something has improved in the ulnar distribution. * * * Also it was questionable to me whether the weakness and the grip was from lack of effort.
Another nerve conduction study performed in September 2000 found “no evidence of slowing across the elbow in either ulnar nerve.” The impression from this study included the observation that the findings of the 14three studies are difficult to interpret and “all of the electrodiagnostic tests are difficult to correlate with this man’s actual symptoms and physical findings.”
Subsequently, Davis returned to LSU where Dr. Karl Bilderback diagnosed a pinched nerve in Davis’s spine. On April 17, 2001, the doctor performed an anterior cervical diskectomy and fusion at Davis’s C5-6. After this operation Davis reported that his left arm pain was improved by 50%. The surgical notes from this procedure reported a history of a jackhammer incident on December 15, 1998. Dr. Bild-erback neither testified nor gave a deposition, partly because he moved to Oklahoma during the course of these proceedings. Dr. Cambize Shahrdar, another orthopedic surgeon at LSU, testified that the operation was necessary to relieve the pinched nerves, but he deferred to Dr. Bilderback on the issue of whether Davis’s problems were caused by the circumstances of the jackhammer incident.
On December 20, 1999, Davis filed the instant disputed claim for compensation, alleging that the accident occurred on December 80, 1998, while operating a jackhammer in a manhole. Davis initially obtained a default judgment, but the WCJ annulled this on November 2, 2002.
The matter proceeded to trial on January 24, 2002. The witnesses testified as outlined above. Mrs. Leon, Miller’s bookkeeper, testified that Davis did not work on December 30, 1998, although according to company records he did work on December 31. Davis’s brother-in-law, Earnest Gay, testified that Davis was usually in pain and had not worked since he started | Rcomplaining of pain. Davis was only a part-time employee of Miller’s during 1998; his W-2 form for that year shows he earned only $3,280 from Miller. Davis earned $10 an hour as a construction worker and had several different employers that year.
The WCJ took the matter under advisement. By judgment dated April 15, 2002, it rendered judgment finding that Davis failed to prove by a preponderance of the evidence that he sustained an accident while in the course of his employment with Miller. The court therefore rejected all his claims with prejudice.

Discussion

By one assignment of error, Davis urges the WCJ erred in failing to find that he proved a work-related accident. He contends that he did not have to establish the exact cause of disability, but merely to demonstrate by a preponderance of proof that a work-related accident had a causal connection with his disability. Allen v. Misco Paper, 27,146 (La.App. 2 Cir. 8/23/95), 660 So.2d 175.
This court recently summarized the law concerning the standard of proof in workers’ compensation cases in Pearce v. Medallion Construction, 36,351 (La.App. 2 Cir. 11/6/02), 830 So.2d 576:
An injured employee is entitled to receive benefits for an injury that arises out of and in the course of his employ *1192 ment. La. R.S. 23:1031. The injured employee bears the initial burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. The claimant is not required to establish the exact cause of the disability, but the claimant must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Thompson v. Dillard’s Dept. Store, 32,974 (La.App. 2 Cir. 5/10/00), 759 So.2d 1074. Proof by a preponderance of the evidence exists |fiwhen the evidence, taken as a whole, shows the facts sought to be proved are more probable than not. Harris v. Coushatta Indus. Sand Inc., 31,977 (La.App. 2 Cir. 6/16/99), 741 So.2d 143; Weeks v. Buffington Corp., 28,507 (La.App. 2 Cir. 8/21/96), 679 So.2d 946.
While the worker’s testimony alone may be sufficient to discharge that burden, it will be inadequate where (1) other evidence discredits or casts serious doubt upon the worker’s version of the incident; or (2) the worker’s testimony is not corroborated by the circumstances following the alleged incident. Clay v. Delphi Interior & Lighting Systems, 34,242 (La.App. 2 Cir. 12/22/00), 775 So.2d 1207.
Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer. Thompson, supra. Factual findings in workers’ compensation cases are subject to the manifest error rule. Smith v. Louisiana Dept. of Corr., 93-1305 (La.2/28/94), 633 So.2d 129. Under the manifest error rule, the reviewing court does not decide whether factual findings are right or wrong, but whether they are reasonable. Stobart v. State, 617 So.2d 880 (La.1993); Graham v. Georgia[-]Pacific Corp., 26,165 (La.App. 2 Cir. 9/23/94), 643 So.2d 352.
After careful review of the record, we perceive no manifest error. The WCJ was entitled to find that other evidence east significant doubt on Davis’s account of the incident. Despite his claim of immediate, debilitating pain, he waited more than one month to seek medical attention. When he did, he complained about nearly falling from a piece of heavy equipment a week earlier, or nearly a month after the alleged jackhammer accident. His medical records contain no mention of a jackhammer incident until January 2000, a month after he filed his Form 1008 and some 11 months after he first saw a doctor. He admittedly did not report the accident to his employer at the time it occurred, and no one from the employer’s office could corroborate that he ever reported it. In sum, none of the events after the alleged incident supported Davis’s version of his injury. |7 Furthermore, without the testimony of Dr. Bilderback, there is no medical evidence to show how the events alleged by Davis could have caused his symptoms. The WCJ was not plainly wrong in rejecting Davis’s testimony about the incident.

Conclusion

For the reasons expressed, the judgment is affirmed at the cost of James Davis Jr. This opinion is designated for publication pursuant to La. R.S. 23.T310.5 F.
AFFIRMED.