I, WILLIAMS, J.
In this workers’ compensation case, the claimant, Carmencita Plater, appeals a judgment in favor of the defendant, Wal-Mart Stores, Inc., denying her request for workers’ compensation benefits. For the following reasons, we affirm.
FACTS
On December 5, 2000, Wal-Mart Stores, Inc. (“Wal-Mart”) hired Carmencita Plater as an overnight stocker at its store located on Jewella Avenue, Shreveport, Caddo Parish, Louisiana. According to Plater, she suffered an injury to her right knee on December 21, 2000 when she struck it on a ladder while stocking merchandise. At trial, she could not recall whether the impact cut her knee; however, in her deposition she testified that the impact left an injury like a small red line on her knee. There were no witnesses to the accident.
Plater did not report the accident to Wal-Mart even though she had just completed orientation where she was informed of Wal-Mart’s policy which required employees to immediately report any such incident, regardless of how minor. Plater explained that she did not believe the injury was severe enough to report. Plater continued working after her injury. At trial, she contended that over the next several weeks after the incident, her knee became progressively worse. She testified that she took Aleve, an over-the-counter pain reliever, both before and after her shifts to help with the pain, and that during her breaks at work she would elevate her knee. Plater testified that she told *250 her co-worker (and cousin), Sandra New-son, about her knee during one of their trips to work together. At trial, Newson | ^confirmed that Plater had continuously complained of pain.
Within a couple of months of Plater being hired, she was promoted from Stock-er to salesperson; however, she claims that her knee continued to hurt and that the pain became so intense that she finally reported the injury to Wal-Mart. On or about February 13, 2001, a Wal-Mart employee took Plater to the ‘Work Kare” department of Willis Knighton Medical Center for treatment of her knee. The medical center notes from that date reflected that Plater said she had hit her knee on a ladder at work and that she denied any previous knee injury. The medical report from a follow-up visit on February 21, 2001 also reflected that Pla-ter related her knee injury to striking her knee on a ladder at work and gave no other definite history. The return-to-work report from that date states, in part, “[Pjainful knee [with] effusion etiology undetermined.”
On February 15, 2001, Wal-Mart denied Plater’s claim for compensation benefits because she did not file a timely report of the accident and because the medical report specified that the cause and date of her knee injury was undeterminable. Pla-ter continued to work for Wal-Mart. Because her doctor limited the amount of time she could work while standing, Wal-Mart gave her a job applying security tags to merchandise.
On or about April 3, 2001, Wal-Mart fired Plater. She contends the supervisors told her she was being released because of a mandatory layoff initiated by corporate headquarters. Plater claims that she has been unable to work since her release due to the pain in her knee. She continued to receive treatment for her knee at LSU Medical Center in Shreveport 13(“LSU”) and underwent chiropractic treatment with Dr. Scott Waltemate. According to Dr. Waltemate, Plater was limping when he first saw her in July 2001. He attributed the limping to compensation for the pain in her right knee. He said that Plater did not tell him of any other accidents or injuries to her right knee or hip. Although Dr. Waltemate’s records repeatedly refer to the treatment of Plater’s left knee, he explained that these references were mistakes or typographical errors.
The evidence shows that Plater was in two car accidents during the period in question. The first accident occurred on December 6, 2000, the day after she was hired at Wal-Mart and approximately two weeks before the alleged ladder incident. During her deposition dated December 4, 2001, Plater testified that she had only been in one car accident. Plater insisted at trial that she did not injure her knee in the December car wreck. However, her medical records from LSU reflect that Pla-ter told medical personnel that she injured her right knee in a car wreck in December 2000. Two undated pages from the report displayed the following statements from the claimant:
“was involved in MVC Dec 2000” and “41 yo BF to 12b c/o [right] knee pain from MVA Dec 2000....”[1]
The accident report from the December 2000 vehicle accident describes the damage to Plater’s car as “moderate/severe,” but indicates no injury to Plater or the other driver.
*251 The second accident occurred on April 19, 2001. Plater testified in her deposition and at trial that her knee was hurting prior to the second | ¿accident and that the accident did not cause her any further injury. However, in a recorded statement to her automobile insurer, State Farm, regarding the accident, she stated as follows:
But I was just sayin’ when I ... had to ... do the kids and goin’ to the telephone pole to me the pressure of tryin’ to do it so quick it just like I said swelled up on me real badly ... and it was just hurtin’ real bad and that’s why I wanted him to go back ... I was concerned about my knee.
An emergency room report with regard to Plater’s second accident dated June 26, 2001 states, in part:
On 5/17/01 (sic), the patient was involved in a motor vehicle accident. She was the restrained driver, hit on the passenger side of the vehicle. She slammed on her brakes with her right foot, trying to avoid a telephone pole. She has since had persistent pain in the right lower extremity from the hip down to the foot, with maximum pain generally in the knee.
State Farm paid Plater $500 for her injuries although she asserted that she did not make a claim for any injury as a result of this accident. Although Plater did not work after she was released from Wal-Mart, she was a regularly paid babysitter for her grandchildren.
In June 2001, Plater filed a claim for compensation benefits. She asserted that she was totally and permanently disabled because of the ladder incident at Wal-Mart. After hearing the testimony of various witnesses including Plater and reviewing the extensive exhibits in this case, the workers’ compensation judge (“WCJ”) ruled that “Ms. Plater’s testimony was not credible and claimant has failed to prove by a preponderance of evidence submitted that she sustained a December 21, 2000 work accident and resulting right knee injury, while employed with defendant, Wal-Mart Stores, Inc.” From the judgment denying her claim for benefits, Plater now | ¡^appeals.
DISCUSSION
By assignments of error, claimant contends that the WCJ erred in finding that she failed to prove her case by a preponderance of the evidence and that her testimony was not credible.
In Pearce v. Medallion Construction, 36,351 (La.App.2d Cir.11/6/02), 830 So.2d 576, this court explained the law pertinent to proof of an on-the-job injury:
An injured employee is entitled to receive benefits for an injury that arises out of and in the course of his employment. LSA-R.S. 23:1031. The injured employee bears the initial burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. The claimant is not required to establish the exact cause of the disability, but the claimant must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Thompson v. Dillard’s Department Store, 32,974 (La.App.2d Cir.5/10/00), 759 So.2d 1074. Proof by a preponderance of the evidence exists when the evidence, taken as a whole, shows the facts sought to be proved are more probable than not. Harris v. Coushatta Industrial Sand, Inc., 31,977 (La.App.2d Cir.6/16/99), 741 So.2d 143; Weeks v. Buffington Corporation, 28,507 (La.App.2d Cir.8/21/96), 679 So.2d 946.
While the worker’s testimony alone may be sufficient to discharge that burden, it *252 will be inadequate where (1) other evidence discredits or casts serious doubt upon the worker’s version of the incident; or (2) the worker’s testimony is not corroborated by the circumstances following the alleged incident. Clay v. Delphi Interior & Lighting Systems, 34,242 (La.App.2d Cir.12/22/00), 775 So.2d 1207.
Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer. Thompson, supra. Factual findings in worker’s compensation cases are subject to the manifest error rule. Smith v. Louisiana Department of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129. Under the manifest error rule, the reviewing court does not decide 16whether the factual findings are right or wrong, but whether they are reasonable. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993); Graham v. Georgia[-]Pacific Corporation, 26,165 (La.App.2d Cir.9/23/94), 643 So.2d 352.
In the event of a compensable injury, the employer or insurer is obligated to furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of the State as legal. LSA-R.S. 23:1203. Also, the manifest error standard accords great deference to the hearing officer, for as fact finder the hearing officer is in the superior position to assess the demeanor and tone of voice that are crucial to the issue of credibility. Rosell v. ESCO, 549 So.2d 840 (La.1989). The hearing officer’s decision to credit the testimony of one of two or more witnesses can virtually never be plainly wrong. Id.
In the instant case, we observe that Plater did not report the alleged work-related injury for several weeks after its occurrence, despite her claim that the condition of her knee worsened and required her to take over-the-counter medicine for pain prior to and after every shift at work. Accordingly, there was no testimony from her supervisor or any other employee to confirm that she had sustained a work-related accident, although Plater’s cousin did confirm Plater’s complaints of pain. The medical evidence shows that Plater has a knee injury, but does not establish that the injury was caused by a work-related accident. In fact, one document shows that Plater gave a history of a prior knee injury arising from a December 6, 2000 car accident.
|7After a thorough review of this record, we cannot say that the WCJ was manifestly erroneous in finding that the claimant was not a credible witness, and in concluding that she had failed to prove by a preponderance of the evidence that she sustained a work-related injury in December 2000 and was entitled to workers’ compensation benefits.
CONCLUSION
For the reasons expressed above, the judgment of the Office of Workers’ Compensation is affirmed. Costs of this appeal are assessed to the claimant, Carmencita Plater.
AFFIRMED.

. MVC/MVA are the hospital's abbreviations for motor vehicle collision/motor vehicle accident.