LOLLEY, J.
After a fall at work, Walter Banks (“Banks”) sought workers’ compensation benefits, penalties and attorney fees. The Office of Workers’ Compensation, District *192 1W (the “OWC”), the Hon. Larry Butler presiding, denied his claim, and Banks now appeals. For the following reasons, we affirm.
Facts
Banks, a laborer in Homer, Louisiana, has worked for various employers around Homer in the wood products and petroleum industries. In September 2002, Banks went to work for the Blocker Company (“Blocker”), in a job which he described as “labor, toting cement and stuff like that. What they needed.” Banks was hired for Blocker by J.T. Grieder (“Grieder”), Banks’ cousin and supervisor on the job. On October 24, 2002, Banks, who was 44 years old at the time, was working for Blocker on the roof of a church in Bossier City when he tripped and fell. Banks fell backwards but did not fall off of the roof. On January 27, 2003, Banks filed a Disputed Claim for Compensation with the OWC in connection with that accident, and the matter proceeded to trial on September 2, 2003.
At the trial, Banks testified that as a result of the workplace accident, he suffered an injury and was disabled. However, Grieder, who was standing next to Banks at the time and saw the accident happen, testified that Banks said that he was not hurt and declined to be taken to the doctor, saying “I’m all right.”
Banks worked the rest of the day on the job but never returned to work for Blocker after that day, claiming that he became more sore later on |athe day of the accident. He also described that he obtained a pain pill from another employee, took another pain pill that night, and continued self-medicating with his wife’s prescription pain medications. Banks said that the next day, he saw Grieder at a store and told him that he had not returned to work because he had injured himself. Grieder denied that this happened.
On October 28, 2002, Banks went to the emergency room at Homer Hospital complaining of pain in his back and both shoulders, which he attributed to his fall at work. An x-ray of his back revealed “Mild lumbar spondylosis. No acute abnormality.” The emergency room report noted back spasms in the cervical and lumbar areas. The emergency-room physician diagnosed Banks with “(1) lumbar strain (2) myoligamentous pain (3) shoulders,” and prescribed medication. Banks was told -to seek further attention if he did not improve.
Banks testified that he called Blocker after the emergency room visit and got the company to pay for the prescriptions, and he claimed the Blocker representative told him to call back for approval of further treatment. He testified that he subsequently made an appointment with a physician but that he never heard from Blocker about authorizing this appointment.
Banks saw Dr. Larry C. Croxton, a chiropractor, on November 7, 2002, with continuing complaints of back and shoulder pain and an additional complaint of leg pain. Including that visit, Dr. Croxton treated Banks nine times during approximately the next month. Dr. Croxton’s notes [ .^indicate that Banks received some temporary relief from his complaints of pain from the treatment. However, on December 5, 2002, Dr. Croxton wrote a “to whom it may concern” letter for Banks, stating that he should be excused from work due to a work-related injury. On December 12, 2002, the doctor suggested further evaluation of Banks’ condition. Banks claims that he was unable to get Blocker to authorize any further treatment.
At the time of the trial, Banks said that he continued to have pain in his back and in his legs, and he would not be able to *193 return to work with the pain. His wife, Casandra Banks, testified that he never complained of any type of back problems prior to the accident.
After hearing the testimony and considering the other evidence, the OWC rejected Banks’ claim for compensation. Although the court found that Banks did suffer a fall at work, the court concluded that Banks had not suffered a compensa-ble injury. A judgment was entered dismissing Banks’ claims, and he now appeals.
Discussion
In Banks’ first assignment of error, he argues that the trial court erred in failing to find that he was disabled as a result of his on-the-job injury. Specifically, Banks claims that his disability was established by his and his wife’s testimony, as well as the objective medical evidence presented at trial.
An injured employee is entitled to receive benefits for an injury that arises out of and in the course of his employment. La. R.S. 23:1031. The injured employee bears the initial burden of establishing the causal | connection between the disability and the employment accident by a reasonable preponderance of the evidence. The claimant is not required to establish the exact cause of the disability, but the claimant must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Proof by a preponderance of the evidence exists when the evidence, taken as a whole, shows the facts sought to be proved are more probable than not. Thompson v. Dillard’s Dept. Store, 32, 974 (La.App.2d Cir.05/10/00), 759 So.2d 1074.
The causal connection can be established when the employee proves that before the accident he was in good health, but commencing with the accident, symptoms of the disabling condition appeared and sufficient medical evidence exists to show a reasonable possibility of a causal connection between the accident and the disabling condition. Harris v. Casino Magic, 38,137 (La.App.2d Cir.01/28/04), 865 So.2d 301, writ denied, 2004-0502 (La.04/08/04), 870 So.2d 275. However, an employee’s pre-existing condition does not disqualify his claim if the work-related injury either aggravated or combined with the infirmity to produce the disability for which compensation is claimed. Id. When the claimant proves that he had no disabling symptoms before the accident, but that commencing with the accident, the disabling symptoms appeared, and there is medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the disabling condition, a claimant’s work injury is presumed to have aggravated a pre-exist-ing infirmity to produce his disability. Id.
| sWhether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer. Harris v. Coushatta Indus. Sand, Inc., 31,977 (La.App.2d Cir.06/16/99), 741 So.2d 143. Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Chaisson v. Cajun Bag & Supply Co., 1997-1225 (La.03/04/98), 708 So.2d 375. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. Id. Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Id. “Thus, ‘if the [factfin-der’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if *194 convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Id., citing Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551.
In this case, although the trial court recognized that Banks had an on-the-job accident, the trial court rejected Banks’ claim of disability due to his accident based upon Banks’ prior history and the inconsistencies in Banks’ testimony. The court’s conclusion was based almost entirely on its impression of Banks’ credibility as a witness. The court observed numerous instances in Banks’ testimony where “he had not exactly told the truth.” The court cited, among other things, inconsistencies in Banks’ testimony | (¡about prior complaints of pain and even that he was Grieder’s cousin. The court concluded:
The medical records reflect either of two possibilities with Mr. Banks. First, he has back problems that necessitate treatment and has had those problems since at least 1996. These problems are no worse today than they were the day before the October 24, 2002 fall. The fall at issue here has neither caused nor exacerbated these problems.
The second possibility is that Mr. Banks has learned through 12 years of experience how to say the right things to doctors to have them diagnose him with these problems. Neither of these scenarios would entitle Mr. Banks to any further compensation benefits.
As a trier of fact given the numerous misstatements of facts by Mr. Banks as pointed out by counsel for the defendant and those I have discovered upon my own review, the testimony of the depositions, statements and records, I find the second scenario more likely than not correct.
This decision was well within the discretion of the trial court given the evidence presented.
As noted by the trial court, Banks had a long history of accidents followed by extended periods of unemployment and subsequent financial settlements. Additionally, his history of accidents resulted in a long history of back problems essentially identical to his complaints that he relates to the instant incident. Most recently pri- or to his fall at work, Banks had been in a car accident on January 11, 2002, and reported complaints of neck, back and leg pain. An emergency room report from the next day reflects that Banks had a second car accident on the same day as the first, where he hit his head on the dashboard. However, Banks denied that there had been a second car accident but said that he had been injured a second time that same day when he hit his head after falling off the top of his car. He was off work for a 17period of time as a result of the car accident. He was treated by a physician for approximately six weeks and released for work in March 2002. Banks ultimately received a monetary settlement for the claim on the car accident.
In an earlier incident in 2001, Banks was injured when a porch roof fell onto his shoulder, for which he complained of right shoulder and neck pain. Banks was off work for an unspecified period after this incident and, again, received a monetary settlement.
Prior to that in 1999, during a period of incarceration, Banks fell off of a top bunk bed and complained of severe pain in his left shoulder and lower back as well as numbness in his left upper leg. In a separate incident that same year, Banks was hit in the head with a pool stick and “had something fall on him.” In connection with that incident, he had complaints of headache and lower back pain.
*195 In September 1995, Banks slipped and fell at his girlfriend’s house. An x-ray-revealed that he had a “normal lumbar spine,” although he complained of pain in his back and his right leg, and he was off work until at least February 1996. At that time, his orthopedist recommended surgery for what was believed to be a herniated lumbar disk, but this surgery was evidently never performed. He had continued complaints of back pain through December 1996. Again, Banks eventually settled a claim for this incident.
Finally, in October 1991 Banks was off work for at least a year and obtained extensive medical treatment after a log fell on him while cutting timber. In connection with that incident, he again complained primarily of |sback and leg pain. Medical records from March 1992 reflect the opinion of the physician that, “[ajside from the patient’s subjective complaints his objective findings are minimal.” Banks’ complaints of back and left leg pain persisted, and he was off work, until at least October 1992. A functional capacity evaluation conducted in June 1992 reflects the opinion of the examiner that Banks was magnifying his symptoms based on the results of the objective tests. After a steroid injection in November 1992, Banks reported in January 1993 that his back pain “comes and goes.” He ultimately settled this claim with his employer.
Other evidence as well supports the trial court’s conclusion that Banks had not suffered any disability as a result of his workplace accident. Grieder reported that Banks claimed to be uninjured immediately after the fall and did not thereafter make any complaint of pain during their numerous fishing trips together. Indeed, Grieder said that he and Banks were regular fishing partners, that they had been fishing “every other day like” since the accident and that Banks had never discussed any injury with him despite long periods of both standing and sitting. Finally, and perhaps most importantly, there was no objective finding of an acute injury to Banks’ back in an x-ray taken on October 28, 2002.
Given the totality of the evidence, the trial court was not manifestly erroneous in concluding that Banks failed to prove that he suffered a disability as a result of his fall. The record supports the trial court’s conclusion that Banks suffered no new injury as a result of his accident on the Blocker worksite. Additionally, as a result of our findings herein, the |flremainder of Banks’ assignments of error are rendered moot. Accordingly, the decision of the OWC is affirmed. Costs of this appeal are assessed to Banks.
AFFIRMED.