# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 21, 2021

Lyle W. Cayce
Clerk

No. 20-30425

BRODERICK MOUTON,

*Plaintiff—Appellant*,

*versus*

UNITED STATES OF AMERICA,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:18-CV-484

Before JONES, SOUTHWICK, and COSTA, *Circuit Judges*.
GREGG COSTA, *Circuit Judge*:*

In this Federal Torts Claim Act fender-bender case, the district court awarded the plaintiff $88,921. The plaintiff appeals, arguing he was entitled to a larger recovery. The many issues the plaintiff raises all essentially challenge the district court's factfinding. Seeing no clear error in the district court's exercise of that core trial-court function, we affirm.

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

## I.

Broderick Mouton was driving his car in the left lane of University Avenue in Lafayette, Louisiana.[1]  He tried merging his vehicle into the right lane.  Someone else was merging into the right lane at the same time—Glenn Meier, who worked for the Federal Aviation Administration.  Meier was entering University Avenue from an Interstate 10 feeder road with a yield sign.  Although Meier claims he yielded and looked for traffic on University before merging, he did not see Mouton's car.  The two cars collided.  The front of Mouton's car made gentle impact with the back of Meier's car and pushed Meier's car into the shoulder.

Pictured below is the intersection where the collision occurred.



---

[1] Because we find no clear error in the district court's factfinding, we take these facts from the court's "Reasons for Judgment."

No. 20-30425

Mouton sued the United States under the Federal Torts Claim Act as Meier was acting within the course and scope of his federal employment when the accident happened. The FTCA uses the tort law of the state where the accident occurred.  28 U.S.C § 1346(b)(1).  Here that is Louisiana.

After a bench trial, the district court apportioned fault evenly between the parties.  The district court found that the accident caused Mouton's neck injuries but not his low-back or head injuries.  For the neck injury, the district court awarded Mouton $108,156 in past medical expenses.  The district court did not award any damages for future medical expenses because the only anticipated future treatment related to Mouton's back injuries.  And the district court found the evidence insufficient to connect the pain medication expenses to Mouton's neck injury.  The district court also awarded Mouton $8,085.39 for damage to the vehicle, $1,600 in lost wages, and $60,000 for loss of enjoyment of life, pain and suffering, and disability.  After reducing each award by fifty percent to account for Mouton's comparative fault, the court awarded Mouton $88,921.

On appeal, Mouton challenges (1) the 50/50 allocation of fault; (2) the findings that the accident did not cause his back or head injuries, or necessitate the prescription medication expenses; (3) the award of $1,600 in lost wages; and (4) the pain-and-suffering award of $60,000.

## II.

Because apportionment of fault is a classic fact issue, we can only correct clear errors. *Water Craft Mgmt. v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006); *Underwood v. Dunbar*, 628 So. 2d 211, 214 (La. Ct. App. 1993).  Recognizing the uphill battle he faces under clear-error review, Mouton tries to cloak his apportionment-of-fault appeal in the legal garb of a tort question about duty, which we would review *de novo*. *Water Craft Mgmt.*, 457 F.3d at 488.  He argues that the district court improperly applied

Louisiana law that gives a heightened duty to drivers who, like Meier, ignore a yield sign. *Solomon v. Am. Nat'l Prop. & Cas. Co.*, 175 So. 3d 1024, 1028 (La. Ct. App. 2015).

Mouton's argument is that even if both automobiles merged at the same time, he should bear no fault because his duty was "minimal." In contrast to the "heavy duty" of ordinary care imposed on a motorist at a yield sign, the motorist with the right of way has a "minimal duty" of care towards drivers entering from side streets. *Id.* And "the driver on a right-of-way thoroughfare is ordinarily entitled to presume that drivers from side streets will not enter the thoroughfare" when a vehicle is in the path. *DeRosier v. S. La. Contractors,* 583 So. 2d 531, 535 (La. Ct. App. 1991).

The district court did not misapply Louisiana law on drivers' duties. It found that Meier breached his duty. It also found that Mouton had a duty and breached his duty. Despite having a minimal duty, a driver with the right of way can still be at fault. *See Hayes v. Covey*, 939 So. 2d 630, 632 (La. Ct. App. 2006) (recognizing that the driver with the right of way still has a duty of being attentive). This can happen if the car with the right of way should have seen another car and had time to react to avoid a collision. *DeRosier,* 583 So. 2d at 535.

What is more, Mouton may not have had the right of way in the lane that Meier entered. Mouton was merging into that lane when the collision happened. As a result, he had a duty to determine that he could safely enter the new lane. LA. STAT. ANN. § 32:79. The district court thus reasonably concluded that Mouton breached a duty in making an unsafe lane change. Among other things, the fact that Mouton's car was behind Meier's when they collided supports the view that Mouton is also at fault because he could have seen Meier's car entering the lane. In this sense, Mouton had the greater duty because he collided from behind Meier's car. *See Spiller v.*

*Ekberg*, 762 So.2d 226, 228 (La. Ct. App. 2000) ("When a following vehicle rear-ends a preceding automobile, the following driver is presumed at fault and must prove a lack of fault to avoid liability.")

Louisiana law on motorists' relative duties thus does not prevent a finding that Mouton was negligent. Nor does Mouton point to any Louisiana law stating that the relative duties of motorists dictate a certain apportionment of fault. So Mouton is stuck with clear-error review of the trial court's 50/50 allocation.

In finding equal fault, the district court did not commit clear error. As Louisiana law directs, the court considered a number of factors relevant to the conduct of each party. *See Watson v. State Farm Fire & Cas. Ins.,* 469 So. 2d 967, 974 (La. 1985). Its allocation of fault to Mouton, based on the notion that he could have avoided the collision as the second car to enter the lane, finds support in testimony, the location of the vehicles, and the extent of damage.

### III.

Clear-error review also poses an insurmountable barrier for Mouton's arguments that the district court should have found he suffered more injuries from the accident. Whether an accident causes an injury is, like apportionment of fault, a paradigmatic fact issue. *See Housley v. Cerise*, 579 So. 2d 973, 979 (La. 1991).

### A. *Lower Back Injury*

The district court did not clearly err in rejecting a connection between the collision and Mouton's back injury. Louisiana law presumes that an injury resulted from an accident if (1) the injured person was in good health before the accident, (2) the symptoms of the disabling condition appear and continuously manifest themselves afterwards, and (3) the medical evidence

shows a reasonable possibility of casual connection between accident and injury. *Housley,* 579 So. 2d at 980 (citation omitted). The district court had a basis for concluding the first requirement was not met. Mouton had suffered from back injuries in the past. He had requested an ambulance for "traumatic back injury" only ten months before the collision. As a result, the district court was not required to apply the presumption.

Even with a presumption, the factfinder makes the ultimate call of whether the plaintiff proved causation. *Id.* The evidence allowed the district court to conclude that the serious workplace accident could have caused the back injury.

The district court did fail to mention that Mouton raised low-back pain as a symptom with an emergency room nurse following the car wreck. But that does not necessarily undermine the district court's conclusion that the workplace injury from just a year earlier caused persistent low-back pain.

Again trying to identify a legal issue to escape the unfriendly clear-error terrain, Mouton argues the district court violated the principle that treating physicians—who supported his claim of a low-back injury—are entitled to more weight than physicians who examine a plaintiff for the purpose of giving expert testimony. *Francis v. Brown*, 671 So. 2d 1041, 1045 (La. Ct. App. 1996). But Mouton is again trying to turn a presumption into a mandate. Louisiana law does not demand that the factfinder always believe the treating physician over all other evidence. *Thompson v. Dillard's Dep't Store*, 759 So. 2d 1074, 1078 (La. Ct. App. 2000). If that were the law, why would a party ever hire doctors as expert witnesses?

At the end of the day, the rule for physicians is the same as it is for other witnesses: the factfinder decides their credibility. *Id.* (upholding trial court finding that plaintiff's work-related accident did not aggravate her injuries even though plaintiff's treating physician testified to the contrary);

*see also Basco v. Natchitoches Parish Sherriff's Dep't,* 586 So. 2d 733, 734 (La. Ct. App. 1991) (upholding jury finding of no injuries even though doctors testified the plaintiff had those injuries and no doctors testified to the contrary). In not crediting all the testimony of Mouton's treating physicians, the district court cited good reasons. It did not credit Dr. Sledge's testimony connecting Mouton's back problems to the car accident because Sledge was unaware of the 2013 workplace incident and the resulting traumatic back injury. And Dr. Weir did not offer a definitive opinion on causation, testifying only that Mouton's history of back pain was "consistent" with the timing of the collision.

We therefore affirm the district court's finding that the car accident did not cause Mouton's back pain. That also means the court correctly declined to include future lumbar surgery in future medical expenses.

### B. Head Injury

Neither did the district court err in rejecting damages for head injuries. It cited sound reasons for doing so, with credibility concerns again playing a big role. Mouton gave different stories to different doctors—and what he told the doctors was at odds with what he told others and how his car looked after the accident. For example, he told Dr. Sledge that he lost consciousness after striking his head on the roof of the car and that the police had to carry him to the ambulance. That is not how the paramedics and Meier remembered things. Mouton told Dr. Weir, his neurologist, that he had extensive damage to his car in the collision, that he struck his head on the roof of his car, and that he "did not lose consciousness but did have some dizziness and a slight alteration in consciousness." That account is at odds with what he told Dr. Sledge, the testimony of those at the scene, and photos of his car.

No. 20-30425

IV.

Mouton also claims that the district court should have awarded him damages for the cost of pain medication that he required after the accident. But rejection of these damages largely flowed from the district court's finding that the accident did not cause back or head injuries, rulings we have already affirmed.

The district court concluded it could not isolate whether Mouton was prescribed the pain medication for the neck pain the government is responsible for versus the back and head pain it is not responsible for. The district court further noted that Mouton was taking pain medication at various times before the accident. Mouton counters with the fact that he only began a "regular" pain medication regimen after the accident. But even if this presents a closer call than some of Mouton's other appellate challenges, any doubts about the district court's ruling do not result in our having a "definite and firm conviction that a mistake has been made." *Knight v. Kirby Offshore Marine Pac. L.L.C.*, 983 F.3d 172, 179 (5th Cir. 2020).

V.

Mouton did receive damages for lost wages but argues he should have received more than two weeks' worth. He contends the court erred because his testimony, while somewhat inconsistent, was that he at least missed a "few weeks" of work. He argues "a few" is more than two.

We need not resolve whether few means greater than two, *see Few*, MERRIAM-WEBSTER (11th ed. 2021) ("Consisting of or amounting to a small number."), because of a mathematical error in the lost wages award that benefitted Mouton. The court stated it was awarding two weeks of lost wages, but that should have resulted in an award of $800. The court instead awarded $1,600, which the parties agree roughly equates to four weeks of lost

wages. So even if a "few weeks" entitles Mouton to three or four weeks of pay, the award gives him that much.

## VI.

Lastly, the district court did not err in awarding Mouton $60,000 in general damages. Such an award is necessarily imprecise, resulting in significant discretion to the factfinder. *Mays v. Chevron Pipe Line Co.,* 968 F.3d 442, 453 (5th Cir. 2020).

The district court noted that a significant amount of Mouton's claimed pain and suffering related only to the back and head injuries for which Mouton failed to prove causation. Mouton argues, however, that the award is unreasonable even just accounting for his neck injury as it required surgery. The "permissible range" for such surgeries, according to Mouton, is between $110,000 and $300,000. Yet Mouton acknowledges that "[t]he few cases that fall below the range of $110,000.00 to $300,000.00 share the common thread that the plaintiffs lacked credibility and/or the surgeries were of questionable necessity." This case shares that common thread. The district court did question the necessity of the surgery. It observed that the neck injuries could have been mitigated through physical therapy that Mouton declined. Mouton also delayed neck surgery. For these reasons, the district court's award was not outside the limits of its considerable discretion in this area.

* * *

We AFFIRM the judgment of the district court.