JUDE G. GRAVOIS, Judge.
| ¡^Claimant, Janeka Hills, has appealed a May 1, 2012 judgment dismissing her claim for workers’ compensation benefits. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL BACKGROUND

On March 28, 2011, claimant filed a Disputed Claim for Compensation, alleging that on April 10, 2010, while working as a crew member at a McDonalds restaurant in Destrehan, she fell and injured her buttocks, back, and hands. Claimant alleged that she had removed a box of French fries from a freezer, and as she went to place the box onto a cart, “because of the grease on the floor my feet just left from under me.” Claimant further alleged that she “fell back on my butt.” Claimant’s employer, Valman Destrehan, L.L.C. d/b/a McDonalds, denied the allegations of the claim.
At trial, the fifty-one-year-old claimant testified that she started working at Me- *958 Donalds in Destrehan on April 3, 2010 and the accident occurred on April 6, I.^OIO.[1] She explained that after getting the box of fries out of the freezer, as she was lifting the box to place it onto a cart, she slipped and fell in some grease that had leaked onto the floor from a fryer. She asserted that the fall was witnessed by the store manager on duty at the time, identified simply as “Keisha.” Claimant told Keisha that she was “o.k. for right now,” and then went to sit in the dining area of the restaurant for about an hour. She stated that she had a headache after her fall, but took some aspirin and was later able to finish her shift. She said that she had “no extreme pain” at the time and worked at McDonalds for three or four more days after the accident without much pain. About eight or nine days after her fall, she claimed that the pain became “excruciating.” She testified that she was told by her supervisors at McDonalds that if she went to the doctor, she would lose her job. She further testified that when her pain got too extreme, she called the general manager of the store, Ian, to tell him that she wanted to go to the doctor. She claims that she called Ian every day several times per day over an extended period of time, but he would not return her calls. When she finally spoke to Ian several months after the accident, he told her to call the owner’s main office in Baton Rouge. Claimant stated that Ms. Sulik, the person to whom she spoke at the owner’s office in Baton Rouge, arranged an appointment for her with Dr. St. Germain in LaPIace. Claimant testified that both Ian and Ms. Sulik told her that McDonalds would only allow her one visit to the doctor.
Claimant testified that Dr. St. Germain checked her reflexes and range of motion and said he did not see anything wrong with her. He refused her request for a prescription for pain medication. Claimant asserted that her pain continued to worsen over time and became unbearable when the weather changed. Also, |4sometimes her leg “goes out,” causing her to fall. Her ex-husband has taken her to several doctors because of pain.
Claimant testified that she advised her supervisors at McDonalds that she was unable to work on Sundays because of lack of transportation; however, her supervisors continued to schedule her to work on Sundays. When this happened, she called in and missed work. This resulted in her being given less and less hours of work per week. Claimant testified that in June 2010, she resigned from McDonalds because she got another job at Angel’s Aftercare, a job which, she testified, would not require her to do any lifting. She testified that she sometimes had to miss work from that job because of pain. After leaving that job, she went to work at Central Marketing, where she also had to miss work because of pain. She stated that she was terminated from both of those jobs because of missing work. During part of this time, claimant was also attending school and had to make up classes she missed because of pain.
Although she admitted that she had been in other accidents (including an accident while working at a Burger King in which a chair fell on her foot, an accident in which a crate of water fell on her at the grocery store, injuring her shoulder, and a car accident in which she injured her *959 neck), claimant stated that she never had any pain like the pain she had after her fall at McDonalds. She stated that her pain is at the base of her spine.
Claimant testified that she sought treatment for her pain from Dr. Verrette at the St. Charles Community Health Center. He referred her to a neurologist at the LSU Medical Center, and she was awaiting this appointment at the time of trial.
On cross-examination, claimant admitted that in January 2010, she filed for Social Security disability benefits, explaining that this was because of her neck, not her back. She also admitted going to the doctor on April 22, 2010 to have her |fiblood pressure treated and that her record of this visit did not mention back pain. She explained that her blood pressure “raises when you’re in pain.” When confronted with medical records in May 2010 that did not mention any complaints of back pain, claimant explained that her chief complaint at that time was her high blood pressure, and although she told the medical personnel at that visit of her back pain, it was not mentioned in her medical record of this visit. Claimant also testified that when she went to the doctor on July 21, 2010 to have paperwork filled out in connection with her application to work at “Aftercare,” she was not having any problems at all on that particular day. She acknowledged that the record of that visit states that she was physically fit to perform the duties of a personal care attendant. She explained that she made that statement to the medical attendant because she needed a job. Claimant testified that her back “really started” hurting around August or September, although she agreed that the first mention of back pain in her medical records at the St. Charles Center was at her December 15, 2010 doctor’s visit. As for the remaining medical records which do not mention back pain, claimant stated that the medical records do not mention all of her complaints, only her “chief complaint.”
The employer called Ian Patton, the general manager of the Destrehan Mc-Donalds, to the stand. He testified that when he first became aware of claimant’s slip and fall, he offered to send her to the doctor. She refused. He testified that the assistant manager also offered medical treatment to claimant. Mr. Patton stated that he worked alongside claimant following her slip and fall and she never complained of pain, never appeared to be in pain, and never asked to go to the doctor. He testified that claimant was terminated from her job at McDonalds because of her failure to come to work on her scheduled shifts. When claimant Rlater contacted him about going to the doctor after she had been terminated, he handled it through his supervisor in Baton Rouge.
On cross-examination, Mr. Patton denied telling claimant that he did not have the paperwork needed for her to schedule a medical appointment after her accident. He denied that McDonalds has a policy whereby an employee who is injured on the job is allowed only one doctor’s visit.
Lauren Sulik, the risk manager for Mc-Donalds, testified that she was contacted by claimant in August 2010. At that time, claimant complained of her back bothering her with changes in the weather. Since it was four or five months after the incident, Ms. Sulik explained to claimant that she would authorize an initial doctor’s visit and would then “refer to the medicals” to determine if she needed further medical care. Ms. Sulik testified that Dr. St. Germain, the physician to whom she sent claimant, found claimant’s examination to be normal and released her to return to regular duty work. Ms. Sulik saw no need for any further medical care and no need to refer claimant to a specialist. Ms. Sulik testi *960 fied that she did not receive any further requests for medical treatment from claimant, nor any requests for payment of any further medical treatment. Ms. Sulik asserted that indemnity benefits had not been paid to claimant because her office had no information regarding any disability and Dr. St. Germain deemed claimant able to work.
On cross-examination, Ms. Sulik testified that after reviewing the medical records from claimant’s treating physician, she probably still would not have authorized further treatment because causation between the accident and the injuries had not been established.
At the conclusion of the trial, the trial judge denied claimant’s claim, explaining that in order to recover workers’ compensation benefits, a claimant |7must prove by a preponderance of the evidence that a work-related event occurred and that an injury was sustained. While recognizing that a claimant’s testimony alone may be sufficient to discharge this burden, the judge found that the medical records in this case were not consistent with claimant’s testimony. The trial judge concluded that there was not sufficient evidence to prove by a preponderance of the evidence that an injury occurred due to this fall. This timely appeal followed.

ANALYSIS

On appeal, claimant argues that, because she presented unrebutted medical evidence and lay testimony supporting her cause of action and no contradictory evidence was presented by her employer, the trial judge erred in finding that she failed to meet her burden of proof. She also contends the trial judge erred in stating that her injuries were degenerative when no evidence was admitted to support that conclusion. The employer responds that the trial judge correctly denied claimant’s claim.
An injured employee is entitled to receive benefits for an injury that arises out of and in the course of his employment. La. R.S. 28:1031. The injured employee (the claimant) bears the initial burden of establishing the causal connection between his disability and the employment accident by a preponderance of the evidence. Pearce v. Medallion Construction, 36,351 (La.App. 2 Cir. 11/6/02), 830 So.2d 576, 578. The claimant is not required to establish the exact cause of the disability; however, the claimant must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Thompson v. Dillard’s Department Store, 32,974 (La.App. 2 Cir. 5/10/00), 759 So.2d 1074, 1076. Proof by a preponderance of the evidence exists when the evidence, taken as a whole, shows the facts sought to be proved are more ^probable than not. Harris v. Coushatta Industrial Sand, Inc., 31,977 (La.App. 2 Cir. 6/16/99), 741 So.2d 143, 147.
A claimant’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the claimant’s version of the incident; and (2) the claimant’s testimony is corroborated by the circumstances following the alleged incident. Jackson v. Savant Insurance Co., 96-1424 (La.App. 1 Cir. 5/9/97), 694 So.2d 1178, 1180. Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. For an appellate court to reverse a trial court’s factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 *961 So.2d 1120, 1127 (La.1987). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Winfield v. Jiffy Lube, 01-0341 (La.App. 1 Cir. 3/28/01), 813 So.2d 428, 430.
Our review of the record indicates that the employer presented evidence that contradicted claimant’s evidence. Accordingly, claimant’s argument to the contrary on this point is without merit. While there was no evidence presented that claimant did not fall, there was considerable evidence presented that claimant was not injured in the fall. Claimant herself testified that she continued to work at McDonalds for several months after the fall and that the reason her hours were decreased was because she did not report to work on Sundays due to a lack of transportation. Claimant did not testify that she missed work at McDonalds due to InPain. Further, the employer’s manager, Mr. Patton, testified that he worked alongside claimant after the fall and she never complained of pain, never appeared to be in pain, and never requested medical treatment. He explained that claimant was initially offered medical treatment, which she refused. Additionally, when claimant finally requested medical treatment, she was referred by Ms. Sulik to Dr. St. Germain, who examined her on September 1, 2010. The medical records from this doctor’s visit indicate that claimant reported that she “slipped on oil on the floor and landed on my butt,” and that “since the rainy season has started my whole body is starting to hurt.” She reported that her pain was intermittent and was located on the “[right] side of head, [right] side of face, [right] side of neck, [right] shoulder, [thoracic] region, lumbar region, [right] buttock, [left] buttock.” The nurse taking the history of that visit commented in the medical record that she “never could really get a straight answer out of patient.” The nurse further noted that claimant refused to “perform lumbar flexion stating that she is unable to bend @ waist, but please note statement above that she did bend @ waist to show me where her foot was hurting & didn’t even realize it.” Dr. St. Germain found claimant’s physical examination to be normal, that she was able to continue regular work duties, and that she did not need any follow-up treatment.
Most telling, however, are claimant’s medical records from the St. Charles Community Health Center. These records indicate that claimant had been treated at this Center for several years for conditions ranging from hypertension to headaches and a sore throat. A review of claimant’s medical records from the St. Charles Center during the pertinent time period can be summarized as follows, to-wit:
• On April 22, 2010, claimant presented to the Center clinic for a follow-up appointment for blood pressure management. She complained of a headache with an abnormal “feeling in her left arm when she sleeps | mwhich is for two months no new complain[t] today.” She was given a full physical examination that did not reveal any abnormalities. She was counseled to take her medication and stop smoking.
• On May 26, 2010, she returned to the clinic for a pap smear. The record indicates that she had not taken her blood pressure medicine for one to two weeks, that she had no new symptoms, and that she was just at the clinic for a pap smear. She was given a full physical examination that did not reveal any abnormalities.
*962 • On July 21, 2010, claimant returned to the clinic for follow-up treatment of hypertension and because she “needs paperwork filled out for her job.” This record states she was here for blood pressure and “physical no complaint today.” She was given a full physical examination that did not reveal any abnormalities.
• On December 15, 2010, she returned to the clinic for medication refills and “back pain.” This record states “here for back pain upper and lower. [Patient] had a car accident in 87 and was fi’eated for injury to several discs in her back, in 2008 she had a neck injury.... In April of 2010 she fell in McDonalds for which she felt fine until Aug or Sept when she saw Dr. St. Germain who ‘did nothing’ ”. S he was given a full physical examination. This exam specifically states that her back was not tender to palpitation and she had no muscle spasms. The record further states that the cervical, thoracic, lumbar, and lumbosacral spine “exhibited no abnormalities.” She was prescribed an anti-inflammatory medication and a muscle relaxer, but no pain medication.
• Claimant did not return to the clinic until May 3, 2011 for a blood pressure check. This record states that claimant “reports having been hit, kicked, punched or otherwise hurt by someone in the past year.” She was given a full physical examination that did not reveal any abnormalities. She was not prescribed an anti-inflammatory, a muscle relaxer, or pain medication.
• On October 7, 2011, she returned to the clinic for a blood pressure check and painful urination. She was given a complete physical examination and the only abnormality noted was that her bladder was tender to palpation. She was prescribed medication for a urinary tract infection and an antianx-iety medication, but no anti-inflammatory, muscle relaxer, or pain medication.
• On November 15, 2011, she returned to the clinic for a blood pressure check and reported feeling light headed and dizzy. She also reported “back pain/ did have unusual activities with work/ now low back hurts and feels tight/ does not radiate.” She was prescribed an anti-inflammatory.
• She returned to the clinic on December 12, 2011 where claimant reported that she “fell on her butt the month of April 2010.” She complained of low back pain radiating to her legs. The pain starts suddenly and is intermittent. The history reports that she had “been hit, kicked, punched | nor otherwise hurt by someone in the past year.” Physical examination revealed a palpable muscle spasm in the left lumbar area with decreased reflexes in her lower leg and a sensory deficit. She was prescribed an anti-inflammatory, muscle relaxer, and pain medication.
• On December 28, 2011, she returned to the clinic complaining of low back pain after a fall at home. No abnormalities are noted in the medical record, but she was given a prescription for pain medication.
• On December 29, 2011, claimant had an MRI of the lumbar spine which showed minimal disc bulging at L3-4 and mild disc bulging at L4-5 and L5-Sl. The impression on the MRI was “mild degenerative changes of disc.”
• On January 4, 2012, claimant returned to the clinic for the results of the MRI. Physical examination revealed a palpable muscle spasm in the left lumbar area with decreased reflexes and *963 strength in the left leg. The assessment was “lumbar disc degeneration, bulging lumbar disc, muscle spasm.” She was given pain medication.
• On February 8, 2012, claimant returned to the clinic where she stated she was there to “follow up on hip pain from a fall while working at Mc-Donalds.”
A review of claimant’s medical records as a whole indicate that claimant did not seek any type of medical treatment for back pain until September 1, 2010, nearly five months after her fall. The results of this examination were normal and claimant was released to return to full duty work without any restriction and without any recommendations for follow-up care. The medical records do not show any further complaint of back pain until December 15, 2010, a full eight months after the fall. Contrary to claimant’s assertion that only her “chief complaint” is recorded in the St. Charles clinic’s medical records, a review of these records indicates that on numerous occasions when claimant went to the clinic for treatment of high blood pressure, other complaints were recorded and addressed. Additionally, employment records from Angels Aftercare Solutions, Inc. indicate that from June 18, 2010 until October 18, 2010, claimant was working as a “direct service worker” caring for disabled individuals. Contrary to claimant’s assertion that this job did not require lifting, the job duties for this position include assisting |12the “consumer” with bathing, dressing, grooming, bowel and bladder care, transfers, housekeeping, laundry, meals, shopping, transportation, and recreation.
Thus, we find that the record, taken as a whole, clearly supports the trial judge’s finding that claimant failed to prove by a preponderance of the evidence that her fall had a causal connection with her alleged disability. The record clearly establishes a reasonable factual basis for the trial court’s finding and that the finding is not clearly wrong. The testimony of Mr. Patton, as well as claimant’s work history and medical records, casts serious doubt upon claimant’s testimony regarding her condition after the fall. Further, claimant’s testimony is not corroborated by her work history and medical records following the fall. Accordingly, claimant failed to carry her burden of proving that she sustained an injury when she fell while working at McDonalds in April 2010.

CONCLUSION

For the foregoing reasons, the judgment of the trial court under review is affirmed.

AFFIRMED

. Although it is not disputed that a slip-and-fall accident involving claimant occurred at the McDonalds restaurant, the record contains inconsistencies as to the date the accident occurred. Claimant testified that the fall occurred on April 6, 2010, the Disputed Claim for Compensation states that the fall occurred on April 10, 2010, and the employer's incident report states the fall occurred on April 12, 2010.